GERNER, Appellant, v. VASBY, and another,
d/b/a VASBY FARMS GRAIN SERVICE, Respondents.

*No. 75–63. Argued November 5, 1976.—
Decided February 15, 1977.*
(Also reported in 250 N. W. 2d 319.)

For the appellant there was a brief by *William Haus* and *Kelly & Haus*, and oral argument by *William Haus*, all of Madison.

For the respondents there was a brief by *Jon P. Axelrod, Burt P. Natkins* and *DeWitt, McAndrew & Porter, S. C.*, and oral argument by *John H. Lederer*, all of Madison.

HEFFERNAN, J.   An action was brought by Willard E. Gerner in which he claimed that the defendants, Helmer Vasby and Joannes Vasby, doing business as Vasby Farms Grain Service, owed him a balance of $23,949.67 for corn delivered to Vasby on December 18, 1973. Vasby answered, denying that he owed the balance to Gerner and alleged as an affirmative defense that he had, on April 4, 1973, entered into an oral contract with Gerner for the future delivery of corn and that the price agreed upon for that corn was $1.25 per bushel and the quantity of corn sold was 10,000 bushels. He alleged that he had tendered the purchase price to Gerner in accordance with the terms of the contract.

After a trial to the court, although the trial judge found the contract did not comply with the statute of frauds, he found that there was part performance, which, under the Uniform Commercial Code, was sufficient to satisfy the statute. The trial court held that the tendered payment by Vasby represented full payment in accordance with the contract, and accordingly judgment was entered dismissing the plaintiff's complaint. We affirm the judgment.

The threshold question is whether a telephone conversation between Gerner and Vasby on April 4, 1973, constituted an oral contract which would be enforceable but for its failure to comply with the statute of frauds. The trial judge made the finding that the parties entered into an oral contract on that date. As a finding of fact, the trial judge stated that:

"On or about April 4, 1973, by telephone plaintiff agreed with defendant Joannes Vasby, a partner of

Helmer Vasby in the grain business, to sell and said defendant agreed to buy 10,000 bushels of corn at $1.25 per bushel."

Assuming the findings of fact to be supported by the evidence, an oral contract was entered into between the parties on that date. Findings of fact by a trial judge will be sustained unless they are contrary to the great weight and clear preponderance of the evidence.

Where more than one reasonable inference arises from the evidence, this court is obliged to support the finding made. *Milbauer v. Transport Employes' Mutual Benefit Society,* 56 Wis.2d 860, 203 N.W.2d 135 (1973) ; *Morris F. Fox & Co. v. Lisman,* 208 Wis. 1, 237 N.W. 267 (1932).

In the very recent case of *Household Utilities, Inc. v. Andrews Co., Inc.,* 71 Wis.2d 17, 236 N.W.2d 663 (1976), this court concluded that it was bound to uphold a trial court's finding of an oral contract, even though this court on review concluded that an extremely close question was posed. If the record could support different inferences—the existence or nonexistence of an oral contract—it nevertheless was the duty of this court on review to view the evidence in the light most favorable to the trial court's finding.

Giving such deference to the trial court's findings, we conclude that the finding that the parties entered into an oral contract on April 4, 1973, was not contrary to the great weight and clear preponderance of the evidence. Gerner, the seller of the corn, testified that, on the date in question, he called Joannes Vasby and asked about the possible sale of future corn, i.e., corn to be sold but not to be delivered until the end of the growing season. Vasby stated that the current price for future corn on that day was $1.25 per bushel. Gerner acknowledged that he was considering selling about 10,000 bushels. According to Gerner, Vasby then said:

"Why don't I make out a contract for you? I'll send it to you, look it over. If you think it's all right, sign it and send it back. Otherwise we won't have a contract."

Subsequently, it appears that Vasby sent a confirmation form to Gerner. It is undisputed that this confirmation form was never signed by Gerner or returned to Vasby.

Vasby testified that he was in the grain business and that he gave his customers a choice of either spot or futures contract sales. When a futures contract was made, the price and quantity of the grain was agreed upon at the time of the contract, but delivery was deferred until a later date, usually at the end of the growing season. A spot sale, Vasby said, was made by a seller, without any previous understanding between the parties, by the delivery of the corn to Vasby's elevator. It was then paid for at the current market price.

Vasby testified that on April 4, 1973, Gerner called him, asked about the price of corn for future delivery and, after a discussion of the price, agreed with Vasby to sell 10,000 bushels of corn at $1.25 per bushel to be delivered in the fall. Vasby denied that he told Gerner that he would send him a contract, which Gerner could either reject or accept. He stated merely that he had sent him a confirmation slip, which confirmation slip was never returned.

Although Vasby's testimony is attacked by Gerner on the ground that he had no independent recollection of the transaction, it is apparent from his testimony that the memorandum of sales which was kept in the Vasby office and which was made, according to Joannes Vasby, contemporaneously with the telephone conversation, refreshed his recollection. The fact that Vasby relied on his business records to refresh his recollection does not make his testimony incredible as a matter of law, because, as Vasby said, the business entries triggered his

memory of the details of the conversation. Vasby testified that it was his usual course of business to consider that the contract negotiations were complete and required no further action after a telephone conversation of the kind he had with Gerner.

At a later time, however, there was another telephone conversation between Gerner and Vasby. The date was sometime in July. In this conversation Gerner stated that $1.25 per bushel was no price for corn. Vasby stated that he expected Gerner to honor the contract that had previously been made.

Vasby testified that, immediately after the futures contract was entered into, he entered into a contract with Continental Grain to sell 10,000 bushels of future corn at the price of $1.36 per bushel.

The testimony of Vasby and of Gerner in respect to the oral telephone contract is substantially contradictory, and no other evidence of the formation of the contract was available to the court. Under these circumstances, the trial judge, as the trier of fact, had the option of believing either version if neither was incredible as a matter of law. He chose to believe the testimony of Vasby. If such testimony was believed, it cannot be said that the finding of fact was contrary to the great weight and clear preponderance of the evidence. In addition, since the judge clearly placed his finding on the relative credibility of the witnesses, and there is no showing that his conclusion in respect to the belief in the testimony of one party, rather than the other, was based on either caprice or abuse of discretion, the testimony must be viewed in the light that the trial judge considered the testimony of Vasby credible and that of Gerner worthy of being given lesser credence.

In the trial judge's memorandum opinion, he pointed out that, immediately following the alleged agreement between Vasby and Gerner, Vasby resold the grain to Continental. He stated:

"We do not think he would have sold the grain had he agreed that there was no commitment by plaintiff to sell or that he offered the opportunity to plaintiff to not agree by not signing."

The appellant (plaintiff) is, of course, correct that this rationale expressed by the trial court does not prove the contract, but we cannot say that it was inappropriate to the question of whether other testimony of Vasby in respect to the oral contract was credible. It was a reasonable approach by the trial court in its determination of whether Vasby was telling the truth.

Even though the testimony of both parties was worthy of belief, we cannot conclude that a finding based on Vasby's testimony was contrary to the great weight and clear preponderance of the evidence. Nor can we conclude that there was any abuse of discretion in giving greater credence to the testimony of Vasby than that of Gerner.

We accordingly affirm the trial court's finding that there was an oral contract between the parties entered into on or about April 4, 1973, in which Gerner agreed to sell, and Vasby agreed to buy, corn for future delivery in the quantity of 10,000 bushels at the price of $1.25 per bushel.

In addition, however, the trial judge found, as a matter of law, that this contract was unenforceable under the statute of frauds. He relied upon sec. 402.201 (1), Stats., which provides:

"402.201 Formal requirements; statute of frauds. (1) Except as otherwise provided in this section a contract for the sale of goods for the price of $500 or more is not enforceable by way of action or defense unless there is some writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought or by his authorized agent or broker. . . ."

It is undisputed that the contract was one that the statute of frauds requires to be in writing, unless the conditions of sec. 402.201 (3), Stats., are met. That statute, which is a delineation of what part performance will be sufficient to make enforceable an oral contract not in compliance with the statute of frauds, provides:

"(3) A contract which does not satisfy the requirements of sub. (1) but which is valid in other respects is enforceable:
"(a) . . . .
"(b) . . . .
"(c) With respect to goods for which payment has been made and accepted or which have been received and accepted (s. 402.606)."

In considering the question of part performance, additional facts are appropriate. The record shows that on December 18, 1973, Gerner delivered 10,321 bushels of corn to Vasby's elevator. When Gerner went in to settle the account with Vasby, Vasby handed him a check for $12,049.67. This represented the purchase price of 10,-000 bushels of corn which Vasby contended were sold at $1.25 per bushel and 321 bushels at $2.44 per bushel, the spot market price on the day of delivery. The great increase in the price of corn between the date of the oral contract and the time of the delivery was the consequence of the agreement between the United States and Russia to sell American grain to the Soviets.

Gerner refused to accept Vasby's tendered check. Subsequently, however, he accepted the check from Vasby pursuant to a stipulation that the acceptance of the check did not constitute a waiver of Gerner's objections to Vasby's contention that a contract had been entered into on April 4, 1973.

The question thus presented is whether Gerner's delivery of the corn in approximately the quantity called for in the oral contract and its acceptance by Vasby constituted part performance under sec. 402.201 (3) (c),

Stats., i.e., "with respect to goods . . . which have been received and accepted."

"Acceptance" is defined by sec. 402.606, Stats.:

"402.606 What constitutes acceptance of goods. (1) Acceptance of goods occurs when the buyer:

"(a) After a reasonable opportunity to inspect the goods signifies to the seller that the goods are conforming or that he will take or retain them in spite of their nonconformity; or

"(b) Fails to make an effective rejection (s. 402.602 (1)), but such acceptance does not occur until the buyer has had a reasonable opportunity to inspect them; or

"(c) Does any act inconsistent with the seller's ownership; but if such act is wrongful as against the seller it is an acceptance only if ratified by him.

"(2) Acceptance of a part of any commercial unit is acceptance of that entire unit."

It is not asserted that Vasby did not accept the corn. Gerner, however, argues that mere acceptance of the goods ought not to trigger the exception to the statute of frauds, for, as he says:

"[A]cceptance is clearly and totally in the control of the buyer (respondent). This means that the appellant is being bound to a contract by virtue of the respondent's actions—not his own."

If the trial court's judgment had been based on the buyer's acceptance alone, there would be considerable validity to Gerner's position. However, it was not. The trial judge based his conclusion that there was part performance consistent with sec. 402.201(3)(c), Stats., on the finding that not only did Vasby accept the corn but that Gerner delivered the corn. Accordingly, the performance was not unilateral. No acceptance could have taken place unless the plaintiff Gerner had affirmatively acted to make the delivery.

That such conclusion is correct is borne out by 2 Corbin, *Contracts*, sec. 482, p. 640. He states that ac-

ceptance and receipt requires action by both the seller and the buyer—that acceptance and receipt are separate acts. He says:

"Acceptance is the unilateral act of the buyer alone, or of his representative; it requires no action or expression on the part of the seller. Acceptance within the meaning of the statute is an expression of assent by the buyer to become the owner of specific goods as the subject matter of the contract made by him with the seller. Receipt, on the other hand, involves a change in possession of the goods . . . ." (P. 641)

Receipt requires a delivery or change of possession from the seller to the buyer. It can only be accomplished, in the absence of a tortious appropriation, by the affirmative assent and conduct of the seller. As Corbin states, sec. 486:

"Receipt, on the other hand, is a change in the physical relations of those specific goods to the seller and to the buyer . . . ." (p. 648)

"If the court finds that there has been a change in actual 'custody' of the goods, it will also find that there has been 'receipt' by the buyer. . . ." (P. 649)

Corbin also points out, sec. 487, p. 650:

"The contract is not made enforceable against the seller unless he in some way participates in or expresses his assent to the change in possession and control."

It is apparent, therefore, that the receipt and acceptance of the corn at the Vasby elevator was not a unilateral act, but was conduct of a bilateral nature. There was delivery by Gerner, and there could be no receipt without a delivery. Hence, that portion of the test of part performance was wholly in control of the seller. The acceptance of the goods was wholly in the control of the purchaser. Accordingly, because there was a delivery of corn by the seller in substantially the same

quantity as agreed upon in the oral contract and because that corn was accepted by the buyer, there has been a bilateral performance of the contract evincing the assent of both parties. *See* also, *Mellen Produce Co. v. Fink,* 225 Wis. 90, 273 N.W. 538 (1937), for a discussion of the meaning of "acceptance and receipt" under the Uniform Sales Act.

Additionally, Gerner contends that, even though in this case there was a delivery of the corn, such conduct is equivocal, for the history of the transactions between Gerner and Vasby shows that Gerner had always sold his grain to Vasby, usually on a spot-sale basis and, on two occasions, as a result of a contract for the sale of future corn. Thus, Gerner argues that the delivery of the corn was not "exclusively referable" to the oral contract if indeed one existed, for his conduct was explainable by the ordinary course of dealings in making spot sales at the current market price.

We think it is undoubtedly true that conduct which is "exclusively referable" to a prior oral contract constitutes part performance. *Toulon v. Nagle,* 67 Wis.2d 233, 248, 226 N.W.2d 480 (1975), is correct in that respect. That case, however, did not reach the question of whether there cannot be part performance pursuant to an oral contract unless the conduct claimed to constitute part performance is "exclusively referable" to the contract.

We conclude that, in respect to the sale of goods under the Uniform Commercial Code, the contract need not be "exclusively referable" to the oral contract.

Comment 2 to sec. 402.201 of the Uniform Commercial Code, 40A Wis. Stats. Anno., p. 95, provides:

"2. 'Partial performance' as a substitute for the required memorandum can validate the contract only for the goods which have been accepted or for which payment has been made and accepted.

"Receipt and acceptance either of goods or of the price constitutes an unambiguous overt admission by both

parties that a contract actually exists. . . . *This is true even though the actions of the parties are not in themselves inconsistent with a different transaction,* such as a consignment for resale or a mere loan of money." (Emphasis supplied.)

It seems clear, therefore, that, in circumstances such as this, where the conduct which is relied upon for part performance is consistent with the contract, such conduct is sufficient to take the contract out of the statute of frauds even though such conduct is not inconsistent with some other dealings arguably had between the parties.

We conclude, therefore, that the delivery of the grain by Gerner and its receipt and acceptance by Vasby made the contract enforceable even though it did not satisfy the "writing" requirements of sub. (1) of sec. 402.201, Stats., the statute of frauds.

We need not, therefore, consider in detail additional arguments made by Vasby to support the contract.

Vasby argued that, under sec. 402.201(2), Stats., Gerner was bound, because, following the oral argument, a confirmation notice was sent to Gerner. That section, in essence, provides that the sending of a confirmation statement within a reasonable time is sufficient to make enforceable a contract *between merchants* even though the requirements of the statute of frauds have not been satisfied. The validity of this argument, of course, rests upon a showing that Gerner was a merchant. "Merchant" is defined by sec. 402.104(1) as:

" 'Merchant' means a person who deals in goods of the kind or otherwise by his occupation holds himself out as having knowledge or skill peculiar to the practices or goods involved in the transaction . . . ."

The trial judge found that Gerner was not a merchant, because the evidence was clear that he was not in the business of selling grain but, rather, conducted a cattle-

feeding operation, and that he grew grain primarily for that purpose and sold grain only when it was surplus to his cattle-feeding needs.

We conclude that Gerner, in the instant case, was not a merchant in respect to the sale of grain and therefore was not bound to the contract under sec. 402.201(2), Stats.

Vasby also argues that promissory estoppel was applicable here, because he, Vasby, in reliance on the contract, had already resold the grain for $1.36 per bushel in reliance on the contract and Gerner now inequitably seeks to be paid $2.44 per bushel after Vasby had substantially, and to his detriment, changed his position by reselling the corn. In view of our prior conclusion that there was an oral contract, which part performance made enforceable, we decline to determine whether promissory estoppel would also be available to Vasby.

We conclude, however, that the trial judge committed error, albeit harmless, in the exclusion of a financial statement which Gerner prepared in connection with a loan application filed with the Production Credit Association on May 3, 1973. Although the purpose for which the document is intended is not expressly stated, it is reasonably apparent that this document was intended to show that, on that day, almost a month following the date of the alleged oral contract, Gerner did not believe that he had committed himself to the sale of his corn to Vasby. This evidence was excluded by the court as being self-serving and hearsay. While the judge was correct in that ruling, so far as he went, we conclude that, under the circumstances, this evidence should have been admitted. It is apparent that this exhibit was offered after counsel for Vasby attempted on cross-examination to create the inference that Gerner assumed he had a contract with Vasby and was willing to abide by it until the Soviet grain deal caused a doubling of the price of grain. The

financial statement was offered as rebuttal testimony to that inference, that is, for the purpose of showing that Gerner's belief that he had no contract with Vasby was not of recent fabrication but dated at least from May 3— prior to the Russian grain deal. As such, although not admissible to show that no contract existed, the exhibit was admissible to rebut Vasby's theory that the repudiation of the oral contract occurred only when it was in Gerner's economic interest to deny its existence.

Sec. 908.01 (4) (a) 2, Stats., provides:

"A statement is not hearsay if:

"(a) *Prior statement by witness.* The declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is:

"2. Consistent with his testimony and is offered to rebut an express or implied charge against him of recent fabrication or improper influence or motive. . . ."

Accordingly, we conclude the trial judge erred in excluding the exhibit offered for the limited purpose of rebutting the inference that Gerner fabricated the nonexistence of the contract only when he saw he could double his proceeds by selling on the open market. Hence, even though admitted, the exhibit would not be probative of the nonexistence of the contract. It would not have changed the underlying evidentiary facts on which we found that the existence of an oral contract was properly determined by the trial court. It added no new dimension to the case that was probative of the real issue. We conclude, therefore, that the error was harmless and does not warrant a new trial.

We accordingly conclude that there was an oral contract for the sale of future corn and that such oral contract was made enforceable by the performance of both parties.

*By the Court.*—Judgment affirmed.