CARGILL, INC., Respondent, V. GAARD, and wife, d/b/a Gaard Elevator Company, Appellants.

*No. 75–575. Submitted on briefs May 1, 1978.—
Decided June 30, 1978.*
(Also reported in 267 N.W.2d 22.)

For the appellants the cause was submitted on the brief of *Robert R. Gavic* of Spring Valley.

For the respondent the cause was submitted on the brief of *John W. Fetzner, Charles B. Harris* and *Law Offices of John W. Fetzner, S. C.,* of Hudson.

HEFFERNAN, J.   The basic question on this appeal is whether the seller, Gaard,[1] is a "merchant" within the

---

[1] Robert J. Gaard and his wife, Beverly Ione, do business as a partnership, Gaard Elevator Co. In that business capacity they are referred to herein as Gaard.

meaning of sec. 402.104(1), Stats., and is bound to his oral agreement for the future delivery of soybeans when he failed to object within ten days to the purchaser, Cargill's, written confirmation of the oral contract. The trial court found that the Gaards were merchants, that an oral contract had been entered into between the parties, and that a written confirmation of the oral contract was received by the seller, to which no objection was made within ten days. Because these findings of fact are not contrary to the great weight and clear preponderance of the evidence, we affirm the judgment for the plaintiff, Cargill.

The basic statutory scheme of the Uniform Commercial Code is set forth in sec. 402.201, Stats.[2]

In the ordinary case, a contract between buyer and seller is not enforceable when the value of the goods is in the sum of $500 or more unless a writing has been executed sufficient to show that a contract has been made and has been signed by the party against whom enforcement is sought. This basic statute of frauds is not applicable where the contract is between "merchants." Even where there is an oral contract between merchants,

---

[2] "402.201 Formal requirements; statutes of frauds. (1) Except as otherwise provided in this section a contract for the sale of goods for the price of $500 or more is not enforceable by way of action or defense unless there is some writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought or by his authorized agent or broker. A writing is not insufficient because it omits or incorrectly states a term agreed upon but the contract is not enforceable under this subsection beyond the quantity of goods shown in such writing.

"(2) Between merchants if within a reasonable time a writing in confirmation of the contract and sufficient against the sender is received and the party receiving it has reason to know its contents, it satisfies the requirements of sub. (1) against such party unless written notice of objection to its contents is given within 10 days after it is received."

however, it is necessary for the party to the contract who seeks to enforce it to send a written confirmation within a reasonable time. The other party will be bound unless he objects within ten days after the receipt of the written confirmation. Sec. 402.104, Stats., defines "merchant":

"(1) 'Merchant' means a person who deals in goods of the kind or otherwise by his occupation holds himself out as having knowledge or skill peculiar to the practices or goods involved in the transaction or to whom such knowledge or skill may be attributed by his employment of an agent or broker or other intermediary who by his occupation holds himself out as having such knowledge or skill."

The facts produced by the plaintiff, Cargill, at trial tended to show that an agent of Cargill reached an oral agreement by telephone with Robert Gaard on January 22, 1973. Gaard, according to Cargill's agent, agreed to deliver 1,350 bushels of U.S.D.A. graded standard soybeans to Cargill in May of 1973 for the price of $4.54¼ per bushel.

Cargill's agent testified that he prepared the written confirmation of the oral agreement required by the statute and, in due course, submitted it to the mail clerk of Cargill. He stated that on June 18, 1973, he saw the confirmation document in the possession of Robert Gaard. The agent testified that on June 4, 1973, Robert Gaard told him that he was not going to deliver the soybeans because he had never signed and returned the contract which was sent to him. Cargill brought suit for breach of contract. Gaard in his answer denied the existence of the oral contract and also asserted in his pleadings that he was not a merchant and, hence, even were there an oral contract, it was void for being in violation of the statute of frauds.

The facts at trial revealed that at the time of the oral agreement in January of 1973, soybeans were selling for

approximately the contract price of $4.54¼ per bushel. On May 31, 1973, the last date on which delivery was to be made, the price was $10.93 per bushel. This startling increase was the result of a large sale of grain to the Russian Government.

The testimony of Robert Gaard and his wife Beverly showed that they operated a business known as the Gaard Elevator Company. They denied that any oral agreement had been entered into for the future delivery of soybeans and denied that any confirmation of the alleged oral agreement was ever received.

The testimony of the Gaards showed that their partnership bills were paid by checks which stated that the Gaard Elevator Company was a bonded grain dealer. There was also testimony that Gaard had a sign in front of his property indicating that he was a grain dealer, and that his truck bore the marking, "Bob Gaard Elevator." Robert Gaard asserted, nevertheless, that he did not hold himself out as a grain dealer, and he stated that he had never before dealt in the futures market. His testimony did reveal, however, that he bought grain from others for the purpose of resale and that he had sold soybeans in 1973 not only to Cargill but to Archer Daniels and to Continental Grain. He acknowledged that each year he distributed an advertising calendar in which he represented himself as a dealer in grain.

It is asserted on this appeal that Gaard was not a merchant but a farmer, who made his living primarily by farming his own cash crops. Gaard, however, acknowledges that the cases upon which he relies to show he was not a merchant involve situations where farmers were selling only their own crops and not, as in the instant case, also selling substantial quantities of crops grown by others. The statute defining merchants states that a person meets that definition if he:

". . . deals in goods of the kind or otherwise by his occupation holds himself out as having knowledge or

skill peculiar to the practices or goods involved in the transaction. . . ."

On the basis of the facts set forth above, the trial court made particularized findings that the Gaards acted in such a way as to create the belief in others that they had special knowledge and skill in grain dealing. They referred to themselves as grain dealers and they advertised as grain dealers, and they not only sold their own crops but they bought the crops of others and sold them to large wholesalers. The finding that the Gaards were merchants is amply supported by the evidence. It cannot be said that the trial court's finding was against the great weight and clear preponderance of the evidence.

Having concluded that the trial court correctly found that the Gaards were merchants—Cargill was indisputably a merchant—the additional issues posed on this appeal are whether an oral agreement was in fact reached and whether a written confirmation was sent by Cargill.

Although the facts are in conflict, the trial court had before it the testimony of Cargill's agent that an oral agreement was entered into on January 22, 1973, for the delivery of soybeans in May and his testimony that he prepared and put into the mailing process the signed confirmation. We need not consider the argued presumption that what was initiated in the mail procedure was mailed to or received by Gaard, because Cargill's agent testified that he saw the confirmatory statement in the possession of Gaard on June 18, 1973. Accordingly, there was evidence that the written confirmation of the oral agreement was actually received.

In addition, the agent testified that, when he talked to Gaard on June 4 about the failure to make delivery, Robert Gaard said that he had received the contract but was not bound by it, because he had not signed it and had not returned it.

The evidence was conflicting because Robert Gaard testified that he did not enter into an oral contract for future delivery and testified that he did not receive any confirmation of the purported oral agreement. The evidence believed by the trial court was, however, sufficient for it to find that the oral contract was made and confirmed in writing.

As we have said recently in *Gerner v. Vasby,* 75 Wis.2d 660, 662, 250 N.W.2d 319 (1977):

"Findings of fact by a trial judge will be sustained unless they are contrary to the great weight and clear preponderance of the evidence.
"Where more than one reasonable inference arises from the evidence, this court is obliged to support the finding made."

Any contradiction between the testimony of Cargill's agent and the testimony of Robert Gaard in respect to the oral agreement and Gaard's receipt of the written, signed confirmation was resolved by the finder of fact when he concluded that Cargill's testimony was to be believed. The findings were not contrary to the great weight and clear preponderance of the evidence and must be accepted on this appeal.

Under these facts, Gaard, as a merchant, entered into an oral contract with Cargill which was confirmed by Cargill, and not objected to by Gaard. Gaard is, accordingly, liable to Cargill for the breach of that contract.

*By the Court.*—Judgment affirmed.