No. 14296

IN THE SUPREME COURT OF THE STATE OF MONTANA

1978

---

WESTERN SIGN, INC., a Montana corporation,

Plaintiff and Appellant,

-vs-

THE STATE OF MONTANA, STATE OF MONTANA
DEPARTMENT OF ADMINISTRATION, STATE OF
MONTANA DEPARTMENT OF HIGHWAYS and STATE
OF MONTANA DEPARTMENT OF COMMUNITY AFFAIRS,

Defendants and Respondents.

---

Appeal from:  District Court of the First Judicial District,
Honorable Gordon R. Bennett, Judge presiding.

Counsel of Record:

For Appellant:

Burton, Waite and Cruikshank, Great Falls, Montana
Charles Cruikshank III argued, Great Falls, Montana

For Respondents:

Hon. Mike Greely, Attorney General, Helena, Montana
Michael Young argued, Dept. of Administration, Helena, Montana
M. G. McLatchey, Dept. of Highways, Helena, Montana
Daniel G. Diemert, Dept. of Community Affairs, Helena, Montana

---

Submitted:  November 20, 1978

Decided:  FEB - 5 1979

Filed: FEB - 5 1979

Thomas J. Kearney
_____ Clerk

Mr. Justice John Conway Harrison delivered the Opinion of the Court.

Western Sign, Inc., hereinafter referred to as Western, appeals from an order of the District Court, First Judicial District, the Honorable Gordon R. Bennett, granting the motion of the State for partial summary judgment on the issue of liability and denying the motion for summary judgment made by Western.

Involved herein is the interpretation of a contract entered into between the State of Montana and three of its agencies and the plaintiff Western Sign, Inc. The State, through its agents, sent out requests for quotations, invitations to bid for contract to be let by the State for materials to build street signs. Western's bid was the lowest qualified one, and so it was awarded the contract. Subsequently, a purchase agreement was entered into by the State and Western, whereby the State agreed to buy from Western all steel sign posts ordered by local governments which were participating in the "signing program". Western procured a store of materials which would enable it to fill all the orders as they came in; in fact, Western procured enough materials to fill the maximum number of orders which would have needed filling had every eligible local government ordered the maximum amount of materials that it could. Its anticipation far exceeded the actuality of events, for the State did not order enough to exhaust Western's supply. Western then sued, alleging _inter alia_, breach of contract by the State for its failure to take all the materials procured by Western.

The District Court determined that there was no breach because the contract was a requirements contract, which

bound the State to take from Western only what it required. Western argues that the State was obligated to purchase the entire quantity stated in the estimate on which Western had bid, which estimate had been incorporated into the contract proper, because the contract was one for a specified quantity.

Disposition of this case is controlled by the Montana Uniform Commercial Code and by Title 13 of the 1947 Revised Codes of Montana. Before applying the law, however, the contract itself must be examined. The Request for Quotation, incorporated by reference into the contract, reads in pertinent part:

> "Steel posts shall be ordered when required on the same summary sheet as the signs but counties and cities have the option to request wood posts which will not be part of the purchase order.

> "Quantities as shown are on a more less basis as detailed estimates are not possible until inventories are completed by each city and county wishing to participate in the safety demonstration program. Orders for signing materials, posts, etc., under this purchase order will be processed for each city or county individually by the Dept. of Highways throughout the fiscal year and vendor shall expeditiously fill these orders and ship materials directly to counties or cities designated within a maximum of 90 days after receipt of an order. The Dept. of Highways shall process the payment of each order after the material has been mutually inspected and accepted by representatives . . ."

The relevant portions of the purchase agreement are these:

> "Seller agrees to sell and deliver and buyer agrees to purchase, accept and pay for all of Buyer's small quantity requirements of materials hereinafter referred to needed for use in the agencies, departments, and offices of the State of Montana.

> ". . .

> "Delivery of said material shall be made as required during the contract order and within a reasonable time after the seller receives a written order therefore from the buyer.

". . .

"These materials shall be of the kind, quantity
and quality set forth in that certain offer
made to the buyer by the seller on Aug. 19,
1975, a copy of which is attached hereto and by
this reference made a part of the agreement.
It is expressly understood and agreed that this
contract is for single orders of the items
listed in said offer which are not in excess
of the quantities for which prices are quoted
in said bid offer.  By this contract, Buyer has
no obligation to buy from Seller the items
listed in said offer when a single order for
said items is for a quantity in excess of the
quantity for which prices are quoted in said
bid offer."  (Emphasis added.)

Western first contends that the State of Montana is a

merchant, and so is to be held to a standard higher than

than of mere good faith.  Section 87A-2-104(1), R.C.M. 1947,

defines "merchant" as follows:

"'Merchant' means a person who deals in goods
of the kind or otherwise by his occupation
holds himself out as having knowledge or skill
peculiar to the practices or goods involved in
the transaction or to whom such knowledge or
skill may be attributed by his employment of
an agent or broker or other intermediary who
by his occupation holds himself out as having
such knowledge or skill."

Certainly it does not "deal in goods" of the sort sub-

ject of the contract; it does not "hold [it]self out as

having knowledge or skill peculiar to the practices or goods

involved in the transaction."  The most that could perhaps

be said is that "such knowledge or skill may be attributed

[to the State] by [its] employment of an agent . . . who by

his occupation holds himself out as having such knowledge

or skill."

Counsel has not cited us to and neither did we find any

decision in which the court has found a state to be a mer-

chant.  Although certain governmental entities, in parti-

cular municipalities, have been found to be merchants when

acting in a particular fashion, for instance, maintaining

a municipal water system and selling water to residents of the municipality, those cases reach that determination of the merchant character via deciding whether the "goods", the water, has a warranty of merchantability. See, e.g., Moody v. City of Galveston (Tex. Civ. App. 1975), 524 S.W.2d 583. But cf. Coast Laundry, Inc. v. Lincoln City (1972), 9 Ore.App. 521, 497 P.2d 1224, 54 ALR3d 930 (impliedly finding municipality not a merchant because no implied warranties of merchantability and fitness for particular purpose in connection with sale and supply of water. This decision has been criticized, e.g., Dolan, The Merchant Class of Article 2: Farmers, Doctors, and Others, 1977 Wash. U.L.Q. 1, 27 (1977).)

We have no question of merchantability here; ergo, that is not a vehicle by which we may be carried to a consideration of the question of the merchant character of the State.

"The Code makes no provision as to the proof of merchant character of a party. The general rule governing burden of proof will require that the party who will benefit by proof of such character carry the burden of proving the merchant character." 1 R. Anderson on the Uniform Commercial Code §2-104:7 (2nd ed. 1970). It may well be that a state may be a merchant in some circumstances; we do not decide that question in this case. We take note, however, that Western did not carry its burden of proof, that it did not demonstrate the State was a merchant in this transaction. Therefore, it cannot prevail on this issue.

As the District Court noted, there is no provision in the contract which specifies an exact quantity and price binding both the seller, Western, and the buyer, the State. The indefiniteness of the quantity, coupled with the speci-

fic reference to the contingency of the participation of the local governments, led the trial court to conclude that, as a matter of law, the contract was a requirements contract. We agree with that conclusion, for, on appeal, Western has failed to show that the terms are so definite as to make it other than a requirements contract.

Once that determination is made, inquiry must be made into what constitutes allowable variations in the estimates of quantity shown in the Request for Quotation. The standard to be employed is one of "good faith", section 87A-2-306(1), R.C.M. 1947, precluding an unreasonably disproportionate variation. Absent such unreasonableness the seller assumes the risk of variations made in good faith by the buyer. See, e.g., HML Corp. v. General Foods Corp. (3rd Cir. 1966), 365 F.2d 77; Standard Magnesium Corp. v. United States (10th Cir. 1957), 241 F.2d 677; Wilsonville Concrete Products v. Todd Bldg. Co. (1978), 281 Ore. 345, 574 P.2d 1112. The party plaintiff claiming a breach has the burden of showing that the defendant acted in bad faith. HML Corp. v. General Foods Corp., 365 F.2d at 83. As in HML Corp., that burden has not been met. See also Summers, "Good Faith" in General Contract Law and the Sales Provisions of the Uniform Commercial Code, 54 Va.L.Rev. 195 (1968), and Farnsworth, Good Faith Performance and Commercial Reasonableness Under the Uniform Commercial Code, 30 U.Chi.L.Rev. 666 (1963).

Western's last challenge is directed to whether summary judgment was appropriately awarded in this case. Appellant Western contends that in making a decision in granting summary judgment to the State the court erred because it failed to rule on eight other positions relied upon by

appellant. Appellant makes no argument at all on those points, but merely baldly asserts that the District Court acted improperly.

This Court has reiterated the rule that an order granting summary judgment, pursuant to Rule 56, M.R.Civ.P., will be upheld in those cases in which the complaining party fails to demonstrate the existence of material and substantial facts which would alter the decision made below. E.g., Harland v. Anderson (1976), 169 Mont. 447, 548 P.2d 613; Montana Deaconess Hospital v. Gratton (1976), 169 Mont. 185, 545 P.2d 670. The plaintiff, the complaining party, has failed to show us such facts as to raise a genuine issue of material fact as would invalidate the conclusions of law of the District Court. Having failed to carry its burden, plaintiff cannot prevail in this Court.

Affirmed.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____
Justices