**COUNTY OF MILWAUKEE, Plaintiff-Appellant,**

v.

**NORTHROP DATA SYSTEMS, INC., Defendant-Appellee.**

No. 78–2290.

United States Court of Appeals, Seventh Circuit.

Argued April 4, 1979.

Decided July 23, 1979.

---

James J. Bonifas, County Corp. Counsel, Milwaukee, Wis.; for plaintiff-appellant.

* The Honorable William J. Jameson, Senior District Judge of the United States District Court

John R. Dawson, Milwaukee, Wis., for defendant-appellee.

Before CUMMINGS and WOOD, Circuit Judges, and JAMESON, Senior District Judge.*

JAMESON, Senior District Judge.

Plaintiff-appellant has appealed from a summary judgment in favor of defendant-appellee, Northrop Data Systems, Inc. (Northrop), in a breach of contract action in which the district court held that the action was barred by a one-year limitation provision in the contract. We affirm.

### Factual Background

The County owns and operates Milwaukee County General Hospital. On June 14, 1972, the County solicited bids for the design, manufacture, and installation of a computerized laboratory information system in the hospital in conformity with specifications prepared by the County. On June 30, 1972, Northrop's predecessor, Berkeley Scientific Laboratories, Inc. (BSL), submitted a bid. It was accepted, and the County issued a purchase order to BSL. The parties then commenced negotiations on a formalized, written sales agreement.

On November 22, 1972, BSL submitted a standard form sales agreement. Following conferences between representatives of both parties, BSL submitted a substantially revised version to the County on January 25, 1973. Further negotiations followed, with numerous revisions in portions of the proposed agreement. On January 3, 1974, after 14 months of negotiation, the final Sales Agreement was executed by the County and returned to BSL. The agreement was executed on behalf of the County by William Mohaupt, Purchasing Administrator of the County Procurement Division, and Ronald Bruni, Associate Hospital Administrator of Milwaukee County Medical Complex.

for the District of Montana, is sitting by designation.

The initial proposal submitted by BSL in November, 1972, contained as paragraph 19(g) the following provision:

No action, regardless of form arising out of the transactions under this agreement, may be brought by either party more than one (1) year after the cause of action occurred, except that an action for non-payment may be brought within one (1) year after the date of the last payment.

This provision remained intact in all subsequent revisions and appears as sub-paragraph 15(h) in the executed agreement.[1]

The contract provided for delivery of equipment by May 15, 1974, commencement of acceptance testing by June 15, 1974, and acceptance by the County on or before July 18, 1974. The deadlines passed without performance. Revised schedules were submitted by BSL on October 10, 1974 and November 27, 1974, the latter establishing delivery and acceptance dates in January and February, 1975. On January 17, 1975, the County submitted a proposed addendum covering the new dates. On February 25, 1975, BSL confirmed by letter its inability to deliver a system by November, 1975, and proposed mutual cancellation.

On June 17, 1975, James J. Bonifas, Deputy Corporation Counsel of Milwaukee County, sent a letter of cancellation to BSL, stating that he had been "directed to cancel the contract" and the "BSL has breached its contract and the county has no alternative but to cancel and request damages". This action was commenced on May 17, 1977.

In granting summary judgment the district court found that there was no genuine issue of any material fact (Rule 56(c) F.R. Civ.P.); Wisconsin law permits the parties to agree upon a limitation period shorter than that provided by statute; the time begins to run when the cause of action accrues; the County's letter of June 15, 1975 cancelling the contract was the last date the cause of action could accrue; and the action accordingly is barred by the one-year contractual period of limitations.

### Contentions of Appellant

Appellant contends that: (1) the applicable statute of limitations, Wis.Stat. § 402.-725, prescribes a six year period and could not be modified by the parties because the County was not a "merchant"; (2) the County's Purchasing Administrator lacked authority to bind the County to the shorter period of limitations; (3) BSL waived the one year contract provision; and (4) substantial issues of fact made summary judgment inappropriate.

### I. Does Contractual One Year Period of Limitations Bar Recovery?

The Wisconsin Uniform Commercial Code provides in § 402.725(1):

An action for breach of any contract of sale must be commenced within 6 years after the cause of action has accrued. By the original agreement the parties, if they are merchants, may reduce the period of limitations to not less than one year.[2]

The district court concluded that the sale was controlled by the Wisconsin version of the Uniform Commercial Code, but declined to decide whether the County was a "merchant" within the meaning of § 402.725(1). The court found it unnecessary to make this interpretation since Wisconsin case law per-

---

1. Changes were made in other portions of paragraph 15. There is no evidence that any question was ever raised with respect to the one-year limitation provision in sub-paragraph 15(h).

2. The term "merchant" is defined in Wis.Stat. § 402.104:

402.104 Definitions: "merchant"; "between merchants"; "financing agency". (1) "Merchant" means a person who deals in goods of the kind or otherwise by his occupation holds himself out as having knowledge or skill pe-

culiar to the practices or goods involved in the transaction or to whom such knowledge or skill may be attributed by his employment of an agent or broker or other intermediary who by his occupation holds himself out as having such knowledge or skill.

(2) . . .

(3) "Between merchants" means in any transaction with respect to which both parties are chargeable with the knowledge or skill of merchants.

mits parties to negotiate a shorter period of limitations than is provided for by statute.

The County agrees that as a general rule under Wisconsin law the parties may bind themselves to a shorter period of limitation (see *e. g., State Dept. of Public Welfare v. Le Mere,* 19 Wis.2d 412, 120 N.W.2d 695, 699 (1963)), but contends that the rule is now limited in its application by § 402.-725(1) and that the County is not a "merchant" as defined by the U.C.C. Northrop argues that (1) the Wisconsin decisional law that parties to a contract may negotiate a shorter period of limitations than otherwise provided by statute is still applicable under the U.C.C., as the district court concluded; but (2) if the U.C.C. did narrow the application of the rule, the County is a "merchant" within the meaning of § 402.725(1).

(a) Effect of § 402.725(1)

The Uniform Commercial Code as drafted and approved by the American Law Institute and National Conference of Commissioners on Uniform State Laws, provides in § 2–725(1): "An action for breach of any contract for sale must be commenced within four years after the cause of action has accrued. By the original agreement the parties may reduce the period of limitation to not less than one year but may not extend it." The Official Comment on this section reads in pertinent part: "This Article takes sales contracts out of the general laws limiting the time for commencing contractual actions and selects a four year period as the most appropriate to modern business practice. . . . Subsection (1) permits the parties to reduce the period of limitation. The minimum period is set at one year. The parties may not, however, extend the statutory period." This Official Comment is set forth in the Wisconsin statute following § 402.725.

When the U.C.C. was adopted in Wisconsin, in § 402.725(1) the "four" year period for the commencement of an action was changed to "six" years, following the period of limitations then in effect for actions on written contracts. The statute provided that the period could not be varied by agreement. A 1969 amendment to § 402.-725(1) added the second sentence of the official text, with the insertion of the words "if they are merchants".

■ We agree with the County that § 402.725(1), as amended, is controlling and should be given effect over prior case law with respect to contract actions under the U.C.C. The Comment on the 1969 Amendment states that the initial change in the Model Act was to "protect the inexperienced buyer from unwittingly reducing his rights to sue for breach of contract". The Comment continues: "The 1969 amendment partially restores the code language but would restrict the right to vary periods of limitations to parties who are merchants."

Other courts have held that upon the adoption of the Uniform Commercial Code the period of limitations therein prescribed supersedes preexisting statutes. See *e. g., Sesow v. Swearingen,* 552 P.2d 705 (Okl. 1976)[3] and cases there cited. The Supreme Court of Wisconsin recognized in *Columbian Banking Co. v. Bowen,* 134 Wis. 218, 114 N.W. 451, 452, (1908), that the negotiable instrument statute was enacted for the purpose of furnishing a certain guide in the determination of questions relating to commercial paper, and in the absence of ambiguity was controlling, and "reference to case law as it existed prior to the enactment is unnecessary and is liable to be misleading". We think the same reasoning is applicable with respect to the Uniform Commercial Code. We conclude that § 402.-725(1) is controlling. Accordingly the one-year limitation is applicable only if the County is a "merchant" as defined in the Code.

(b) County as a "Merchant".

The definition of "merchant" in the Wisconsin Statute, § 402.104(1) (set out in note 2), follows verbatim the definition in the

---

**3.** It may be noted also that in *Sesow v. Swearingen* the Oklahoma U.C.C. provided for a five year limitation instead of the four year limitation period in the Model Act.

Uniform Commercial Code, § 2–104(1).[4] The Official Comment notes that the term "merchant" as defined in the code "roots in the 'law merchant' concept of a professional in business". "Merchant" as used in the code is given three alternative definitions: (1) a person [5] who deals in goods of the kind involved in the transaction; (2) a person who holds himself out as having knowledge or skill peculiar to the practices or goods involved in the transaction; or (3) a person to whom such knowledge or skill may be attributed by his employment of an agent or broker or other intermediary who by his occupation holds himself out as having such knowledge or skill.

The Official Comment distinguishes "professionals" from a "casual or inexperienced seller or buyer". The comment indicates that code provisions [6] regarding merchants which "rest on normal business practices which are or ought to be typical of and familiar to any question in business" (such as contract modifications) should be read broadly; almost every person in business would be deemed to be a merchant since the business practices involved are non-specialized. In these business practices banks and even universities may be "merchants".[7] But the comment stresses that this applies only to a merchant in his mercantile capacity.[8]

With specific reference to the third alternative in defining "merchant"—the "or to whom such knowledge or skill may be attributed by his employment of an agent"— the Official Comment states that the "definition of merchant means that even persons such as universities, for example, can come within the definition of merchant if they have regular purchasing departments or business personnel who are familiar with business practices and who are equipped to take any action required".

The question whether a county may be a merchant as that term is used in the U.C.C. is a question of law for the courts to decide by applying the U.C.C. definition of merchant to the facts in the case. See *Nelson v. Union Equity Cooperative Exchange*, 548 S.W.2d 352, 354 (Texas 1977); *Decatur Cooperative Assoc. v. Urban*, 219 Kan. 171, 547

**4.** This court in *Lambert Corp. v. Evans*, 575 F.2d 132 (7 Cir. 1978) recognized that the definition of "merchant" is the same in the Model Act and the Wisconsin statute. That case involved a contract for the sale of a product line "package" of floor sweepers, and the court held that there could be "no real doubt that both of the parties were 'merchants' as that term is defined in the Uniform Commercial Code".

**5.** "Person" is defined in § 1–201(30) of the Uniform Commercial Code as including an individual or an organization. "Organization" is defined in § 1–201(28) of the U.C.C. as including *inter alia*, a government or governmental subdivision or agency.

**6.** The Official Comment does not, of course, deal with the definition of "merchant" with respect to the statute of limitations, as this exception does not appear in the Model Act. Rather it is concerned with the use of the term "merchant" in Code provisions relating to "the statute of frauds, firm offers, confirmatory memoranda and modification". The same is true of the cases cited *infra*. We see no reason, however, why the same construction of the term "merchant" should not apply to § 402.-725(1) of the Wisconsin U.C.C.

**7.** On the other hand, it appears from the Official Comment that any implied "warranty of merchantability" is restricted to "a much smaller group than everyone who is engaged in business and requires a professional status as to particular kinds of goods".

**8.** Many of the cases which have considered the meaning of "merchant" in the U.C.C. have involved farmers, including two cases construing the Wisconsin U.C.C. In *Gerner v. Vasby*, 75 Wis.2d 660, 250 N.W.2d 319, 325 (1977) the court held that Gerner "was not a merchant in respect to the sale of grain" because he was not in the business of selling grain but, rather, conducted a cattle-feeding operation and grew grain primarily for that purpose and sold grain only when it was surplus to his cattle feeding needs. In *Continental Grain Co. v. Brown*, 19 U.C.C.R.S. 52 (Wis.1976) the United States District Court, W.D.Wis., noted that, "There seems to be wide acceptance of the view that, in dealing in sales of his own products, a farmer may be a 'merchant' as the term is used in the Uniform Commercial Code. . . . In fact, it appears likely that the term 'merchant' is intended to apply to all but the consumer purchaser or the most casual and inexperienced seller. . . . It is reasonable to charge persons with the knowledge and skill of merchants if the persons create the impression of familiarity with particular products or practices".

P.2d 323, 328 (1976); *Sierens v. Clausen*, 60 Ill.2d 585, 328 N.E.2d 559 (1975).

Applying the definitions of "merchant" to the facts of this case, it is clear that the first definition is inapplicable. Milwaukee County does not deal in computers. The second definition is not so easily rejected. Milwaukee County prepared the specifications for the design, manufacture, and installation of a computerized laboratory information system. Arguably this is "hold[ing] (itself) out as having knowledge or skill peculiar to the practices [or goods] involved in the transaction" because the bid itself indicates knowledge peculiar to the goods being solicited by the County. The County would appear to be more of a professional than a casual or inexperienced buyer. Because the negotiations for the modification of the applicable period of limitations in the contract is a normal business practice which is typical of and familiar to business the merchant definition might be read broadly to include the County.

But the third definition of a "merchant" under the U.C.C. makes it clear that the County is a merchant in this case. The reasoning under which the County might be found to be a merchant under the second definition is incorporated into the application of the third definition. The County's use of an agent who holds himself out as having knowledge and skills peculiar to the goods or practices involved in the transaction allows the attribution of his knowledge to the County.

The County, through its agents, solicited the contract bids in conformity with specifications which the County had prepared. BSL's bid was accepted and contract negoti-ations began between BSL and the County. The County was represented in the contract negotiations by Ronald Bruni, Associate Hospital Administrator of Milwaukee County Complex, James Cox, Manager of Administrative Services of the County's Department of Administration, and James Walters, then Planning and Research Administrator. Mr. Bruni was primarily responsible for the negotiations. He is a certified public accountant whose responsibilities as an employee of the hospital include management of the finances, business operations, and systems of the hospital. The contract was extensively negotiated over the fourteen months between acceptance and execution. The final contract was executed by the Purchasing Administrator of the County Procurement Division and Mr. Bruni. The County's use of these agents who had special skill and knowledge as to the practices involved in contract negotiations and to the specification of the computer (the goods) involved in the transaction bring Milwaukee County within the third alternative U.C.C. definition of a merchant.[9] The County comes within this definition of "merchant" just as the university cited in the Official Comments might be found to be a merchant because it employed business personnel who were familiar with business practices and who were equipped to take any action required.[10]

The County's argument that it is a consumer because it is not engaged in the manufacture, sale or marketing of a laboratory systems or other products, but is engaged only in the procurement of supplies, materials and equipment for the operation of the hospital ignores the broad U.C.C.

9. See *Old Albany Estates, Ltd. v. Highland Carpet Co., Inc.*, 24 U.C.C.R.S. 114 (Okl.1978) where a warranty disclaimer as to carpet was found to be effective against a contractor because the contractor employed an interior decorator who knew more than the average person about carpet. The interior decorator's knowledge regarding the goods chosen was imputed to the contractor.

10. But see *Western Sign, Inc. v. State of Montana*, 590 P.2d 141, (Mont.1979), where the State of Montana and three of its agencies through their agents had solicited bids. The court held that Western Sign had failed to carry its burden of proof in establishing the State to be a merchant which could be held to a higher standard than good faith in performance of the contract. The court said it found no case in which the court had found a state to be a merchant, although other governmental entities including municipalities had been found to be merchants, but it acknowledged that a state may be a merchant in some circumstances. That question was not decided in the case. 590 P.2d at 144.

definition of a merchant. The purchase of a laboratory systems computer is sufficiently related to the County's operation of the hospital as a professional enterprise that the contract should not be treated as a casual consumer transaction.[11]

## II. *Did the County's Agent Lack Authority to Bind the County to a Shorter Period of Limitations?*

■ Milwaukee County contends that reduction of the period of limitations could be accomplished only by action of the County Board, not by its Purchasing Administrator, and thus the reduction of the period of limitations is ineffective.

The district court properly rejected this argument. It found that the Purchasing Administrator is supervisor of the Division of Procurement which is given broad powers in the County Ordinances to enter into contracts for the purchase of authorized items. Because the County sued for breach of contract, the court presumed the Administrator had power to enter into the contract for the purchase of the computer equipment. The court refused to allow the County to select out portions of the contract as being ineffective for failure to follow the appropriate procedure while leaving the remainder of the contract intact. The court found that in light of the broad powers outlined in the County Ordinances for the purchasing agent, the purchasing agent had the power to contract for a one-year period of limitations.

The County created the appearance of apparent authority for its Purchasing Administrator to contract for the purchase of the computer. During the contract negotiations the County directed that the signature line for Milwaukee County be revised to read "Milwaukee County By its Department of Administration, Procurement Division". The applicable county ordinance gives the Administrator broad powers to contract. There is no restriction of the Administrator's authority to negotiate a shorter period of limitations.[12] The contract period of limitations is valid.

## III. *Has the Contractual One Year Period of Limitations been Waived by BSL?*

■ The delivery dates of the system were adjusted several times after the contract was negotiated. Initially the system was to be delivered and accepted by July 18, 1974. This was revised to provide for acceptance by January, 1976. The revision of target dates is pointed to by the County as evidence that dates were of no great significance under the contract. These delays in the performance of the contract do not, however, establish a waiver of the one-year period of limitations as the County argues.

The County cancelled the contract in June, 1975.[13] It did not initiate this action until May, 1977.[14] The County does not argue that any actions of BSL after the cancellation of the contract manifest a waiver of the one-year period of limitations. Once, the contract was cancelled the one-year period of limitations began to run.

---

**11.** This case is factually distinguishable from the cases dealing with blood transfusions which concern a warranty of merchantability by the hospital or doctor. See *Foster v. Memorial Hospital Association of Charleston*, 219 S.E.2d 916, 18 U.C.C.R.S. 287 (W.Va.1975). As previously discussed, the definition of a merchant is more restricted when concerned with a warranty of merchantability. When a hospital contracts for more traditionally recognized market products it may be a merchant under the U.C.C. definition. The County and the hospital have a professional status as to the computer. See also *Schuman v. Johns Hopkins Hospital*, 9 U.C.C.R.S. 637 (S.Ct. of Baltimore City, 1971).

**12.** See *Independent Consolidated School District No. 24 v. Carlstrom*, 277 Minn. 117, 151 N.W.2d 784, 787 (1967).

**13.** The district court found that the County's June 17, 1975 letter canceling the contract established the last date from which it could be argued that the County's cause of action accrued since that was the County's acknowledgment that there was no hope of performance by BSL.

**14.** The action was filed on May 17, 1977 in the Circuit Court for the State of Wisconsin in Milwaukee County and removed to federal court on July 19, 1977.

Any activities modifying the dates of performance of the contract prior to the cancellation of the contract are irrelevant to that period of limitations. Waiver by BSL of the one-year period of limitations has not been established.

#### IV. *Do Substantial Issues of Fact make Summary Judgment Inappropriate?*

Based on the pleadings, affidavits, deposition testimony of the County's personnel, the contract between the parties and other documents and correspondence relating thereto, the district court concluded that there were no genuine issues of material facts and that Northrop was entitled to a judgment as a matter of law, under Rule 56(c) and (e). On appeal the County argues that summary judgment was improper because substantial issues of fact remain, i. e., whether the County was a merchant, whether the Purchasing Administrator had power to contract for a one-year period of limitations, and whether the one-year period of limitations was waived.

It is true, as the County argues and as this court has often recognized, that summary judgment is a drastic remedy. It is equally clear, however, that it is a wholesome remedy where applicable to the circumstances and that the purpose of Rule 56 is to eliminate a trial where it is unnecessary and results in delay and expense. While "appellate courts should not look the other way to ignore the existence of the genuine issues of material facts . . . neither should they strain to find the existence of such genuine issues where none exist". *Mintz v. Mathers Fund, Inc.*, 463 F.2d 495, 498 (7th Cir. 1972), and cases there cited.

The County's argument is conclusory and does not specify what facts are in dispute. From our review of the record, we conclude that the district court properly found that there were no genuine issues of material facts. The "merchant" question involves the application of a legal definition to undisputed facts. Likewise, the agency and waiver issues presented questions of law and not of facts and were properly resolved by the court in granting summary judgment.

AFFIRMED.