HARVEST STATES COOPERATIVES, a Minnesota corporation, Plaintiff-Respondent,†

v.

Timothy ANDERSON, Defendant-Appellant.

Court of Appeals

*No. 97–2762–FT. Submitted on briefs December 22, 1997.—Decided February 24, 1998.*

(Also reported in 577 N.W.2d 381.)

†Petition to review denied.

On behalf of the defendant-appellant, the cause was submitted on the brief of *L. J. Webster* of *Oltman & Webster, Ltd.* of Ellsworth.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Jordan B. Reich* of *Kohner, Mann & Kailas, S.C.* of Milwaukee.

Before Cane, P.J., Myse and Hoover, JJ.

CANE, P.J. Timothy Anderson appeals a judgment for $5,000 entered in favor of Harvest States Cooperatives.[1] Anderson argues that the trial court erroneously applied § 402.104(3), STATS., to conclude that he was a "merchant." Based upon the undisputed facts, we agree and reverse the judgment.

At the trial to the court, Anderson, a thirty-year-old forklift operator, testified that he does not own a farm but has cows and grows corn. On three prior occasions he has sold a corn crop. Anderson testified that in August of 1995, he contacted Harvest by telephone and told them he had 5,000 bushels of corn for sale. He "asked them what they were paying, and they told me,

---

[1] This is an expedited appeal under RULE 809.17, STATS.

and they asked if I would like to see a contract, and I said yes." No delivery date was discussed. In response, Harvest sent an unsigned confirmation of contract in the mail.

Anderson testified that he looked at the contract briefly, but did not sign it and did not send it back. He testified that he believed he had the option to accept or reject the contract, and that he "didn't like how they—well, they had the right to reject or refuse the grain." He testified that he was going to use the corn as feed if needed. He eventually sold some of it elsewhere for a better price.

Larry Laber, a Harvest employee, testified that when Anderson did not deliver the corn, Harvest replaced it at $1.00 per bushel higher than the price quoted Anderson. As a result, Harvest sued Anderson for $5,000.

■

Anderson defended on the ground that because there was no written agreement, the alleged transaction violated the statute of frauds. *See* § 402.201(1), STATS. The trial court held that "a farmer who sells grain is a merchant." It ruled that because the transaction was "between merchants," within the meaning of § 402.201(2), STATS., and the parties had entered into an oral contract, the written confirmation eliminated the statute of frauds defense.[2] Section 402.201(2), in

---

[2] Section 402.201, STATS., provides:

**Formal requirements; statute of frauds. (1)** Except as otherwise provided in this section a contract for the sale of goods for the price of $500 or more is not enforceable by way of action or defense unless there is some writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought or by the party's authorized agent or broker. . . .

157

essence, provides that the sending of a written confirmation within a reasonable time is sufficient to make enforceable an oral contract *between merchants* even though the requirements of the statute of frauds have not been satisfied. *Gerner v. Vasby*, 75 Wis. 2d 660, 670, 250 N.W.2d 319, 325 (1977). The trial court entered judgment against Anderson.

■

Anderson argues that the trial court erroneously concluded that he was a merchant.[3] We agree. "The question whether [an individual] may be a merchant as that term is used in the U.C.C. is a question of law for the courts to decide by applying the U.C.C. definition of merchant to the facts in the case." *County of Milwaukee v. Northrup Data Sys.*, 602 F.2d 767, 771 (7th Cir. 1979). We decide questions of law de novo. *Ball v. District No. 4 Area Bd.*, 117 Wis. 2d 529, 537, 345 N.W.2d 389, 394 (1984). The issue of whether a farmer is a "merchant" has generated a fair amount of litigation. *See* David B. Harrison, Annotation, *Farmers as "Merchants" within Provisions of UCC Articles 2, Dealing with Sales,* 95 A.L.R.3d 484, 486 (1979). Wisconsin has adopted verbatim the Uniform Commercial Code definition of merchant. *See Northrup Data Sys.*, 602 F.2d at 770–71.

---

**(2)** Between merchants if within a reasonable time a writing in confirmation of the contract and sufficient against the sender is received and the party receiving it has reason to know its contents, it satisfies the requirements of sub.(1) against such party unless written notice of objection to its contents is given within 10 days after it is received.

[3] Anderson also argues that the trial court erroneously denied his motion for summary judgment and erroneously held that the parties entered into an oral contract. Because we decide the case on one issue, we need not address others. *Sweet v. Berge*, 113 Wis. 2d 61, 67, 334 N.W.2d 559, 562 (Ct. App. 1983).

"Merchant" means a person who deals in goods of the kind or otherwise by his . . . occupation holds himself . . . out as having knowledge or skill peculiar to the practices or goods involved in the transaction or to whom such knowledge or skill may be attributed by his . . . employment of an agent or broker or other intermediary who by his . . . occupation holds himself . . . out as having such knowledge or skill.

Section 402.104(3), STATS.

■

The official comment distinguishes "professionals" from a "casual or inexperienced seller or buyer." *Northrup Data Sys.*, 602 F.2d at 771. It states that almost every person in business would be deemed a "merchant" under the statutory language: "who . . . by his occupation holds himself out as having knowledge or skill peculiar to the practices . . . involved in the transaction" since the practices involved in the transaction can be such nonspecialized practices as answering the mail. *See* WIS. STAT. ANN. § 402.104(1), official cmt. (West 1995). Nonetheless, while it is widely accepted that a farmer who sells the products he raises may be a "merchant," courts have looked at a variety of factors to determine whether a farmer in a given case falls within the U.C.C. definition. *See* 95 A.L.R.3d, *supra*, at 486.

Based on contrasting facts, two Wisconsin cases have reached opposite conclusions of whether the farmer in question was a "merchant" under § 402.104(1), STATS. In *Gerner*, the transaction involved 10,000 bushels of corn. Our supreme court determined that the farmer, who conducted a cattle feeding operation and grew grain primarily for that purpose, and sold grain only when it was surplus to his cattle feeding

needs, was not a "merchant." *Id.* at 663, 670–71, 250 N.W.2d at 322, 325.

In contrast, in *Cargill, Inc. v. Gaard,* 84 Wis. 2d 138, 267 N.W.2d 22 (1978), our supreme court concluded that the farmers involved in a transaction to deliver 1,350 bushels of graded standard soybeans were "merchants." The court considered that they "referred to themselves as grain dealers and they advertised as grain dealers, and they not only sold their own crops but they bought the crops of others and sold them to large wholesalers." *Id.* at 143, 267 N.W.2d at 24.

We do not agree with the trial court's general proposition that "farmers who sell grain are merchants." Because the status of "merchant" does not attach to the casual or inexperienced seller, whether a farmer is a "merchant" rests upon the individualized facts as applied to § 402.104, STATS. For example, holding that the farmer in question was not a merchant, the Iowa Supreme Court considered that the farmer sold no crops or livestock other than that which he raised; had no business experience other than farming; had limited experience selling crops because he sold crops on approximately three prior occasions; and never bought any crops except for feed and seed. The court stated:

> The concept of professionalism is heavy in determining who is a merchant under the statute. . . . The defined term "between merchants", used in the exception proviso to the statute of frauds, contemplates the knowledge and skill of professionals on each side of the transaction. The transaction in question here was the sale of wheat. Appellee as a farmer undoubtedly had special knowledge or skill in raising wheat but we do not think this factor,

coupled with annual sales of a wheat crop and purchases of seed wheat, qualified him as a merchant in that field.

*Sand Seed Serv. v. Poeckes,* 249 N.W.2d 663, 666 (Iowa 1977) (quoting *Decatur Coop. Ass'n v. Urban,* 547 P.2d 323, 328 (Kan. 1976)).[4]

Harvest places great reliance on *Continental Grain Co. v. Brown,* 1976 WL 23612, 19 U.C.C. Rep. Serv. 52 (W.D. Wis. 1976), which held that the defendant farmers, who were brothers, were "merchants."[5] We conclude that *Continental Grain* distinguishes itself on its facts. The farmers, ages thirty-seven and forty-one, had farmed all their adult lives, reporting that they owned and farmed at least 1,200 acres and raised crops and dairy cattle. As part of their dairy operation, they regularly sold a large proportion of the calves. They raised most of the grain they fed their herd, but also purchased feed, spending between $8,742 and $57,088 annually between 1971 through 1973.

---

[4] For a discussion of various cases reaching opposing results, *see* David B. Harrison, Annotation, *Farmers as "Merchants" within Provisions of UCC Articles 2, Dealing with Sales,* 95 A.L.R.3d 484 (1979). *Cf. also Sebasty v. Perschke,* 404 N.E.2d 1200, 1202–03 (Ind. App. 1980) ("Agri-businessman" who regularly grows crops for sale as sole means of livelihood was a "merchant.").

[5] *Continental Grain Co. v. Brown,* 1976 WL 23612, 19 U.C.C. Rep. Serv. 52 (W.D. Wis. 1976), is an unpublished opinion cited in *County of Milwaukee v. Northrup Data Sys.,* 602 F.2d 767, 771 n.8 (7th Cir. 1979). Federal court decisions interpreting Wisconsin law are not precedent. *Daanen & Janssen, Inc. v. Cedarapids, Inc.,* 216 Wis. 2d 394, 399, 573 N.W.2d 842, 844 (1998).

In 1974, the farmers planted over 1,000 acres of corn, expecting to yield 125 to 150 bushels per acre. That year they entered into two contracts with a feed service, the first to sell 20,000 bushels of corn at $2.64 per bushel, and the other to sell 25,000 bushels of Grade 2 corn at $3.21 a bushel, with delivery in July, and 75,000 bushels of Grade 2 corn at $3.03 per bushel with deliveries in October through December. The trial court found that before entering into these contracts, the defendant farmers had visited Continental Grain's offices with a proposal for the sale of corn which evidenced "a certain degree of sophistication concerning such sales." The court found: "In this case, the size alone of defendants' farming operation and the quantities of corn available for sale would have led plaintiff to believe that defendants were familiar with farm products or with the practices of selling farm products, or both." The court held that a "sale of 75,000 bushels of corn for a total price in excess of $212,000 is not a 'casual' sale." *Continental Grain* at 5.

Here, Anderson's testimony concerning his individual circumstances as a farmer is uncontroverted. Anderson started working on his father's farm at age eighteen, and worked there as an employee for ten years. He farmed by himself for two years. During the time he worked for his father, his father sold crops just one time. Anderson does not own a farm himself, but has cows and grows crops. He uses the crops to feed his cows, and in the last three years he sold corn, once for his father and twice for himself. The sales consisted of two to six thousand bushels. He planned to sell as much of his corn crop not needed for feed. He testified that his procedure was the same each of the three times he sold a crop:

162

[W]ell, my procedure was I just haul the corn to Durand, have them dry it, pull up to the window and you tell the person that runs the scale whether you want to store it, sell it or what you want done with it. And they take the corn and you leave.

Anderson had never seen a sale confirmation contract before Harvest had sent one out to him and had never signed a contract to sell crops in any of those past occasions.

█

To conclude that Anderson was a grain "merchant" within the meaning of § 402.104(1), STATS., would be to stretch the meaning of the term beyond any reasonable interpretation. The record contains no evidence with respect to the size of Anderson's farming operation. However, it is undisputed that he does not own a farm. His three prior experiences, involving relatively small quantities of corn that he drove to the scale and sold without any written contract, put him in the category of the casual and inexperienced seller. As a result, we conclude that he is not a "merchant" with respect to the sale of corn in question, and is therefore not bound to any contract under § 402.201(2), STATS.

*By the Court.*—Judgment reversed.