NEWTON, Appellant, v. NEWTON, Respondent.

*November 28, 1966—January 3, 1967.*

184

For the appellant there was a brief by *Michael Klein*, attorney, and *Irving D. Gaines* and *David A. Saichek* of counsel, all of Milwaukee, and oral argument by *Mr. Gaines*.

For the respondent there was a brief by *Kersten & McKinnon* of Milwaukee, and oral argument by *Charles J. Kersten*.

BEILFUSS, J.   The plaintiff's major contention on this appeal is that the action of the trial court is equivalent to granting a nonsuit or a demurrer to the evidence at the close of plaintiff's case. At this stage in a trial, plaintiff asserts, the trial court must construe the evidence in the light most favorable to the plaintiff and must give the plaintiff the benefit of favorable inferences that can reasonably be deduced from the credible evidence. *Beaudoin v. Watertown Memorial Hospital* (1966), 32 Wis. (2d) 132, 136, 145 N. W. (2d) 166; *Bartz v. Braun* (1961), 14 Wis. (2d) 425, 111 N. W. (2d) 431. Plaintiff contends that the trial court erred in construing the evidence in the light most unfavorable to the plaintiff.

In order to pass on plaintiff's contention it is important first to recognize the nature of the action taken by the trial court. The usual abode of a judgment of nonsuit is a jury case where the defendant has moved for nonsuit after the close of the plaintiff's case and before the defendant has offered any evidence. Such a judgment is usually not on the merits and is not ordinarily a bar to another action. *Kaley v. Van Ostrand* (1908), 134 Wis. 443, 445, 114 N. W. 817. In like manner, a peremptory nonsuit is not on the merits and is not a bar to another action for the same cause. *Gates v. Parmly* (1896), 93 Wis. 294, 310, 311, 66 N. W. 253, 67 N. W.

739; *Gummer v. Omro* (1880), 50 Wis. 247, 252, 253, 6 N. W. 885. The case at bar was to the court; no motion for nonsuit was made by the defendant. At the close of plaintiff's case the court dismissed plaintiff's action *on the merits* and dictated a memorandum decision in which the court stated which inferences it drew from the testimony. Thereafter formal findings of fact and conclusions of law were filed, and judgment was entered dismissing the plaintiff's action on the merits. Since its action was on the merits, the court did not grant a nonsuit in this case. Rather, as trier of fact and law, the court weighed the evidence, drew inferences from the testimony, found that the defendant was not guilty of cruel and inhuman treatment toward the plaintiff, and denied the divorce on the merits.

We do not consider the findings and judgment to be a dismissal upon a motion for nonsuit.[1] Rather the court dismissed the action for what it considered to be insufficiency of the proof.

The court, in its discretion, can dismiss a divorce complaint for want of sufficient proof at the conclusion of the plaintiff's case, without hearing the testimony of the defendant, if the evidence offered by the plaintiff does not satisfy the statutory requirements for divorce as those requirements have been defined and interpreted by this court. However, at this stage of the trial, unless the evidence is inherently or demonstrably incredible, the trial court must construe the evidence in the light most favorable to the plaintiff and must give the plaintiff the benefit of the favorable inferences that can reasonably be deduced from the credible evidence. Thus at the end of the plaintiff's case, if the evidence is tested and evaluated in this manner and it still does not come up

---

[1] There is grave doubt that a motion for a nonsuit is a proper motion in a case tried before the court without a jury. See *Yahr v. Joint School Dist. No. 2* (1898), 99 Wis. 281, 74 N. W. 779; *Dietz v. Neenah* (1895), 91 Wis. 422, 64 N. W. 299, 65 N. W. 500; *Sliter v. Carpenter* (1905), 123 Wis. 578, 102 N. W. 27.

to the statutory standards for divorce, the trial court may dismiss the complaint; however, if the evidence so evaluated does meet the statutory standards, the plaintiff has made a *prima facie* case and is entitled to a judgment of divorce if no further contradictory proof is offered.

"In *Lewis v. Lewis, supra,* the supreme court of California said:

" 'A case having been made out, there is no arbitrary power to grant or refuse the relief. But, in every action for divorce, the court is called upon to determine whether the evidence before it does establish the truth of the charge made in the complaint.

" 'As in other cases, every intendment is in favor of the finding made. Such finding is not to be overthrown on appeal, unless it is very plain to the appellate court that the conclusion reached cannot be supported on any rational view of the testimony.'

"In *Tipton v. Tipton, supra,* it was held that courts do not exercise the pardoning power, and the fact standing by itself that society will be benefited more by refusing a divorce than granting it, confers no choice on the court where the requirements of the law as to the right to a divorce are met. In the absence of legal justification for denial, the evidence having established the allegations respecting cruel and inhuman treatment of the plaintiff by the defendant, a divorce should have been granted. There is no finding of the court and no evidence of anything that amounts to recrimination. It is quite evident from the finding quoted that the learned trial court in dealing with this matter acted on a mistake of law respecting the right of a court to exercise discretion in cases of this kind." *Mattson v. Mattson* (1931), 204 Wis. 424, 426, 235 N. W. 767.

The plaintiff seeks a divorce upon the ground of cruel and inhuman treatment.

In *Heffernan v. Heffernan* (1965), 27 Wis. (2d) 307, 312, 313, 134 N. W. (2d) 439, the court described the tests that must be met by a party seeking a divorce on the ground of cruel and inhuman treatment:

". . . we conclude that no precisely described or enumerated acts of one spouse toward another can be

defined as cruel and inhuman treatment. In order to constitute cruel and inhuman treatment, such as to warrant the granting of a divorce or a legal separation, the court must consider the totality of conduct and the detrimental effect it has upon necessary marital relationships and its grave effect upon the health of the other spouse. The conduct of the offending spouse must be unreasonable and unwarranted, it must render the parties incapable of performing their marital duties, and it must have a detrimental effect upon the physical or mental health of the offended spouse. In applying these tests the court should be cognizant of the desirable public policy in maintenance of marriage and family. The court may properly consider the age of the parties, the duration of the marriage, and presence and age of the children and the probability of delinquency, and the public dependency of the parties or the children."

Briefly, the plaintiff testified that for the last seven and one-half years his wife has refused to have sexual relations with him because "she was either too tired or not feeling well or something or other;" that for the past ten years his wife had been an extremely poor housekeeper, doing no laundry, cleaning or cooking; that there had been no housekeeper in the house for at least ten years; that the family's meals were prepared by Mrs. Newton's mother, who lived in the downstairs part of the duplex in which they lived; that he had had no company to speak of in their home because their home was not a fit place to have anybody in and he was ashamed of it. The plaintiff further testified that his wife refused to accompany him to various social functions "because she was too busy or too tired, or not feeling well or something," except on several rare occasions; that his wife had mishandled the family finances so that the plaintiff found himself over $2,000 in debt when he took over handling the finances in February, 1965. Mr. Newton testified that his wife's refusal to have marital relations "was very nerve wracking and, well, my physical condition went down to the point where I went to the doctor and was treated and given vitamins

and pills and that sort of thing and I was very nervous and had difficulty at home and at work and every place as a result of that and the other things that were happening." He further testified that he was nervous, run down, and that he had lost weight.

On cross-examination plaintiff testified that he had been in the company of a Mrs. Doreen Taft, a recently divorced woman, on a number of occasions; that he had driven Mrs. Taft around one night from 9 p. m. until 1 a. m. in order to counsel her on personal matters while she was still married; that he had taken Mrs. Taft and her five children out for dinner; that after her divorce became final he had visited Mrs. Taft (along with her children and some friends) at her summer home in the summer of 1965; that he was subpoenaed to give depositions in the Taft divorce matter but did not testify at the trial; and that there was nothing improper about his conduct with regard to Mrs. Taft. When defendant's counsel asked plaintiff if he had not slept with his wife for a period of two weeks after he had begun this action, plaintiff answered, "That is not true. That is positively not true. That is absolutely not true."

The trial court weighed and evaluated the plaintiff's testimony, taking into consideration the credibility and the demeanor of the plaintiff as a witness. The trial court found:

(1) That defendant had not to any substantial extent denied to have sexual relations with plaintiff in view of his attitude of complete rejection toward his wife which indicated that he had no desire to have relations with her;

(2) That plaintiff had failed to establish that defendant was a poor housekeeper in view of defendant's poor health after the tragic death of two of their children and in view of plaintiff's failure to provide supplementary cleaning service within their standard of living;

(3) That if plaintiff's claim that the home was not a fit place to bring company is true it was more plaintiff's

responsibility than defendant's because of his rejection of her and the poor state of her health;

(4) That plaintiff failed to establish that defendant had mishandled family funds or had been improvident in spending;

(5) That by his attitude and testimony plaintiff had indicated no concern or desire to understand, no sympathy or love or affection for his wife;

(6) That prior to and during the pendency of the divorce action plaintiff was associating with another married woman and this conduct was highly humiliating to defendant; and

(7) That there is a total lack of proof that defendant had been guilty of cruel and inhuman conduct toward the plaintiff. The court explicitly stated that its decision was not based on plaintiff's conduct with regard to Mrs. Taft.

We conclude that the trial court did not construe the plaintiff's evidence in the light most favorable to the plaintiff and did not give him the benefit of the favorable inferences that would be drawn from the credible evidence.

As we view the evidence it stands uncontradicted and unimpeached and is not inherently or demonstrably incredible. Plaintiff has testified to a course of conduct that does constitute cruel and inhuman treatment under the test as set forth in *Heffernan v. Heffernan, supra.*

It may be argued that to allow a divorce upon a *prima facie* case by the plaintiff will open the door to collusion for spouses who do not have statutory grounds for divorce but just do not want to continue the marriage. Admittedly, the public has an interest in the stability and maintenance of marriage.[2] This danger may be obviated by three statutory procedures: (1) The statutory requirement of corroboration in default cases as required by sec. 247.18, Stats.; (2) the right of the court to deny a

---

[2] See sec. 245.001 (2), Stats.

divorce sought to be procured by collusion, connivance or condonation as prescribed in sec. 247.10; and (3) the participation of the family court commissioner to protect the public interest as provided in sec. 247.15.

In this case it may well be that the denials and testimony of the defendant and other evidence presented will serve to challenge and discredit the testimony of the plaintiff to a sufficient degree so as to warrant a dismissal of plaintiff's complaint, but as the record now stands he has made out a *prima facie* case entitling him to a judgment of divorce.

Because the defendant was not permitted to testify or offer other evidence, she has not had her day in court—she must be afforded this opportunity. Therefore, there must be a new trial.

The plaintiff has requested that in the event of a new trial that the clerk of the circuit court be directed to assign the case to a circuit judge other than the one who has heard it. This we decline to do.

*By the Court.*—Judgment reversed, and cause remanded for a new trial.