HOUSEHOLD UTILITIES, INC., Appellant, v. ANDREWS COMPANY, INC., Respondent.

*No. 144 (1974). Submitted on briefs October 30, 1975.—*
*Decided January 6, 1976.*
(Also reported in 236 N. W. 2d 663.)

18

22

For the appellant the cause was submitted on the briefs of *Bruce C. O'Neill* and *Cahill & Fox,* all of Milwaukee.

For the respondent the cause was submitted on the brief of *Multhauf, Wimmer & Evans* and *John C. Curran* of counsel, all of Waukesha.

BEILFUSS, J. Both parties state the issue on this appeal to be whether the trial court erred in granting defendant's motion for nonsuit. The test that has been applied by this court in such cases is the same as that to be employed by the trial court in ruling on the motion in the first instance. That is—the court must view the evidence in the light most favorable to the plaintiff; and if there is any inference which might reasonably be drawn therefrom which supports the plaintiff's claim, the motion for nonsuit should be denied.[1] In this state, involuntary nonsuit is a common-law motion equivalent to a demurrer to the plaintiff's evidence.[2] This court has

---

[1] *Liebmann v. Busalacchi* (1971), 52 Wis. 2d 692, 695, 191 N. W. 2d 31; *Trogun v. Fruchtman* (1973), 58 Wis. 2d 569, 585, 207 N. W. 2d 297.

[2] *See: Styczinski v. Styczinski* (1967), 36 Wis. 2d 36, 152 N. W. 2d 865.

expressed "grave doubt" as to the propriety of a motion for involuntary nonsuit where, as here, the case is tried to the court without a jury.[3] Under our current practice, the appropriate way to challenge the sufficiency of plaintiff's evidence in a case tried to the court is by a motion to dismiss on the ground that plaintiff has failed to establish a *prima facie* case. *State ex rel. Skibinski v. Tadych* (1966), 31 Wis. 2d 189, 193, 142 N. W. 2d 838.

Whether the case is tried to the court alone or to a jury, the defendant may challenge the sufficiency of the evidence at the close of plaintiff's case. There is some dispute, however, as to whether the standards to be applied by the court in ruling on such a challenge, the effect of the ruling, and the scope of appellate review are the same in each case. The dispute has its source in the differing nature of the court's function in the two cases. In a case tried to a jury, the court sits as arbiter of the law and the jury as trier of fact. Where there is no jury, however, the court performs both functions.

A challenge to the sufficiency of the evidence, of course, requires that some quantum determination be made with respect to the facts in the case. Where the case is tried to a jury, the court's ruling is necessarily limited to a determination of whether there is a dispute as to the facts or whether conflicting inferences might be drawn from the facts as presented. In this respect, a motion for nonsuit is equivalent to a motion for directed verdict. The court may grant neither unless it finds, as a matter of law, that no jury could disagree on the proper facts or the inferences to be drawn therefrom; and that there is no credible evidence to support a verdict for the plaintiff. This approach is necessary to preserve the litigant's right to a jury trial.

Where there is no right to a jury trial, or where that right has been waived, however, the court itself is

---

[3] *See: Newton v. Newton* (1967), 33 Wis. 2d 182, 187, 147 N. W. 2d 328.

the ultimate finder of fact. In such a case there appears to be no good reason to view the evidence in the light most favorable to the plaintiff or to seek inferences from the facts which, under some view, might support plaintiff's claim. The plaintiff has the burden, in most cases, to present facts which will support his claim to relief. When he has rested it is to be presumed that all evidence favorable to that claim has been presented. Theoretically, his case will never be stronger than at that point. As a result, a ruling granting the motion to dismiss should constitute a disposition of the case on its merits. The findings of a trial court sitting without a jury will not be set aside on appeal unless they are contrary to the great weight and clear preponderance of the evidence.[4] This court need not, on such an appeal, view the evidence in the light most favorable to plaintiff or draw inferences therefrom which might, under some view, support his claim.

This position has been adopted by the federal courts.[5] This appears to be the most reasonable approach to the problem. Unfortunately, a contrary approach, at least in part, appears to be indicated by previous decisions of this court and by the Rules of Civil Procedure which became effective January 1, 1976.[6]

In *Newton v. Newton, supra,* a contested divorce case, this court indicated that a motion for nonsuit was probably inappropriate in a case tried to the court without a jury. However, the court went on to hold that, in ruling on a motion to dismiss following plaintiff's case, the trial court should consider the evidence in the light most favorable to plaintiff, drawing all inferences therefrom

[4] *See: Milbauer v. Transport Employes' Mut. Benefit Society* (1973), 56 Wis. 2d 860, 203 N. W. 2d 135; *In re Adam's Rib, Inc. (Kaminsky)*, (1968), 39 Wis. 2d 741, 159 N. W. 2d 643.

[5] Wright & Miller, *Federal Practice and Procedure (Civil)*, pp. 218–223, 248, secs. 2371, 2376; 5 Moore's Federal Practice (2d ed.), pp. 1151–1160, sec. 41.13 (2), (3), (4).

[6] *See:* 1973 Wis. Stats. Supplement.

which would support a finding that the statutory prerequisites to divorce had been met. The court reversed the trial court's order dismissing plaintiff's petition, concluding that the trial court "did not construe the plaintiff's evidence in the light most favorable to the plaintiff and did not give him the benefit of the favorable inferences that would be drawn from the credible evidence." The court in *Newton* did not directly state what test would be applied on appeal from such an order if the trial court had, in fact, properly evaluated the evidence. However, in quoting from *Mattson v. Mattson* (1931), 204 Wis. 424, 426, 235 N. W. 767, which in turn cited a California decision, the court indicated that in such a case the trial court's finding would not be overturned on appeal unless unsupported by any rational view of the evidence. Thus, while the trial court must view the evidence most favorably to the plaintiff, this court on appeal will not independently so test the evidence but will determine only whether the trial court's conclusion is supportable by any view of the evidence.

This approach, unfortunately, runs contrary to this court's position in *State ex rel. Skibinski v. Tadych, supra.* That case was a special proceeding tried to the court to have an election declared void because of certain alleged campaign violations. A motion to dismiss at the end of plaintiff's case was granted on the ground that plaintiff had failed to meet his burden of proof. This court held that there was no difference, with respect to the test to be applied on appeal, between an involuntary nonsuit and a motion to dismiss on the ground that plaintiff failed to establish a *prima facie* case. In both instances, the court stated, "we must examine the evidence in the light most favorable to the plaintiff and draw all reasonable inferences in his favor since the dismissal was against him." In dismissing the complaint, the trial court stated that the question whether plaintiff had met

his burden of proof " 'revolves itself upon one particular point, that is the credibility of witnesses.' " This court affirmed the dismissal, but only after considering all the evidence as credible. The court's approach appears to be contrary to the general rule that credibility of witnesses is a question to be determined by the trier of fact, in this case the court itself. *See: Ernst v. Greenwald* (1967), 35 Wis. 2d 763, 151 N. W. 2d 706; *Acme Equipment Corp. v. Montgomery Co-operative Creamery Asso.* (1966), 29 Wis. 2d 355, 138 N. W. 2d 729. In *Newton,* this court indicated that the trial court's view of the evidence must be favorable to plaintiff "unless the evidence is inherently or demonstrably incredible."

The confusion is not cleared up by the new Rules of Civil Procedure. The involuntary nonsuit is abolished by the provisions of sec. 805.14 (2), Stats.[7] Under that rule, a motion for involuntary nonsuit is to be treated as a motion to dismiss. Sub. (3) allows a defendant to move for dismissal on the ground of insufficiency of the evidence at the conclusion of plaintiff's case. However, sub. (1) provides, in pertinent part:

"TEST OF SUFFICIENCY OF EVIDENCE. No motion challenging the sufficiency of the evidence as a matter of law to support a verdict, . . . shall be granted unless the court is satisfied that, considering all credible evidence and reasonable inferences therefrom in the light most favorable to the party against whom the motion is made,

[7] "NONSUIT ABOLISHED; MISDESIGNATION OF MOTIONS. (a) The involuntary nonsuit is abolished. If a motion for involuntary nonsuit is made, it shall be treated as a motion to dismiss.

"(b) When a party mistakenly designates a motion to dismiss as a motion for directed verdict, or vice versa; or mistakenly designates a motion to change answer as a motion for judgment notwithstanding the verdict, or vice versa; or otherwise mistakenly designates a motion challenging the sufficiency of evidence as a matter of law, the court shall treat the motion as if there had been a proper designation."

there is no credible evidence to sustain a finding in favor of such party."

As adopted by this court, the rule draws no apparent distinction in application between a trial to the court and one before a jury. Indeed, standing alone, the cited section appears to be equally applicable to both types of case. However, when the language of the rule as first proposed is compared with its final form, a basis appears for an argument that the test stated in sub. (1) is intended to be applied only in jury cases. The proposed rule read:

"(1) TEST OF SUFFICIENCY OF EVIDENCE. No motion challenging the sufficiency of the evidence as a matter of law to support a verdict, an answer in a verdict, *or a finding of fact in a case tried without a jury*, . . ." (Emphasis supplied.)

The deletion of the emphasized language can be taken to indicate an intent to bring the Wisconsin law into harmony with the federal practice.

The rule requiring a review of the evidence in a light most favorable to plaintiff serves a useful and indispensable purpose in the jury case by preserving the litigant's right to a jury determination of factual disputes. We find no good reason to apply the same rule in a case which is tried to the court alone. We conclude the best approach is that taken by the federal courts: To allow the trial court to make determinations of fact and accord them the finality normally accorded any final judgment in a case tried to the court alone. The language or rules in previous cases are hereby withdrawn, where necessary, to reflect this rule.

The present action is for breach of an alleged construction contract. The burden of establishing the existence of a contract is on the person attempting to recover for its breach. In this case, the trial court concluded that plaintiff, Household, had failed to establish

that there had been the "meeting of the minds" between the parties which is required to establish the existence of a contract.[8] There is no meeting of the minds where the parties do not intend to contract and the question of intent is generally one to be determined by the trier of fact.

The intent of the parties in a case such as this must necessarily be derived from a consideration of their words, written and oral, and their actions. The exhibits and testimony in this case present an extremely close question on the issue of whether the parties ever did achieve the required "meeting of the minds" with respect to the essential terms and conditions of the alleged agreement.

Household claims that a contract was formed when Braden, acting for Andrews, sent a photocopy of the purchase order which was received by Household on February 8, 1972. The fact that Andrews ordinarily awarded subcontracts by issuing purchase orders and the fact that the purchase order was marked "confirming" tend to indicate that a contract was formed. The $200 mistake in the purchase price was insignificant and was apparently viewed by all parties as a simple clerical error. Further, the subsequent correspondence between the parties concerning specific materials and supplies can be considered to be normal and of a type that occurs on most construction jobs of similar magnitude. Finally, there is correspondence (one letter from Andrews itself) which indicates that the parties considered Household to be the sheet metal subcontractor on the project.

Nevertheless, there is also evidence tending to show that the parties never did agree on the essential terms and conditions of the contract. First, the record reveals that Household requested a new purchase order

[8] *See: Zuelke v. Gergo* (1951), 258 Wis. 267, 271, 45 N. W. 2d 690; *Todorovich v. Kinnickinnic Mut. Loan & Bldg. Asso.* (1941), 238 Wis. 39, 298 N. W. 226.

from Andrews. This request could be interpreted as an attempt to acquire a corrected purchase order. However, in light of other correspondence, it could also be construed as an attempt to get a contract in the first instance. For example, by letter dated February 22, 1972, Household provided Andrews with a list of jobs it had performed in the past. It is difficult to reconcile such a letter with Household's assertion that it believed it had a contract when the photocopy of the purchase order was received on February 8th. Most of the other correspondence between the parties concerning equipment, materials and prices could be considered adjustments normal to the contractor-subcontractor relationship. However, not all the letters can be so characterized. On March 1, 1972, Household sent two letters to Andrews— one concerning what equipment and materials were to be used on the job and the other asking for three sets of revised plans and specifications and requesting a new purchase order. By letter dated March 17, 1972, Household again asked Andrews for revised plans and specifications. This correspondence supports the trial court's conclusion that there was never any reasonable certainty as to the basic terms and requirements of the alleged contract.[9] Viewing the evidence in this manner, the finding of the trial court that there was not a meeting of the minds is not against the great weight and clear preponderance of the evidence.

*By the Court.*—Judgment affirmed.

[9] *See: Witt v. Realist, Inc.* (1962), 18 Wis. 2d 282, 118 N. W. 2d 85.