Jerome J. AHNE, Frederick C. Bauer, R. Warren Churchill, Paul J. Dahl, Burton L. Edwards, Mary Gauthier, Ernest Kreitzberg, William W. Pokel, Robert H. Sullwold, Jannes H. Teller, Samuel L. Winker, individually and as representatives of a class of similarly situated terminated employees who were participants and/or beneficiaries of the Allis-Chalmers Salaried Employees' Termination Pay Plan, Plaintiffs,

v.

ALLIS–CHALMERS CORPORATION, Allis-Chalmers Credit Corporation, Allis-Chalmers Leasing Services Corp., Allis-Chalmers Services, Inc., Allis-Chalmers Gas Coal Corporation, Agricultural Equipment Company, Kilngas R & D, Inc., and Allis-Chalmers Salaried Employees' Termination Pay Plan, Defendants.

No. 83–C–921.

United States District Court,
E.D. Wisconsin.

July 22, 1986.

Kenneth R. Nowakowski, Whyte & Hirschboeck, Milwaukee, Wis., for plaintiffs.

Charles B. Wolf, Vedder, Price, Kaufman & Kammholz, Chicago, Ill., for defendants.

## DECISION AND ORDER

WARREN, District Judge.

Plaintiffs, all former salaried employees of the defendants commenced this action on July 22, 1983, seeking compensatory and punitive damages based on events stemming from their employment relationships with defendants and the terminations of these relationships. The complaint alleges principally that the defendant employers acted contrary to federal and state law by making termination payments to plaintiffs based on the plaintiffs' temporarily reduced salaries, rather than on their established base salaries, as allegedly required by the termination pay plan applicable at the time of plaintiffs' terminations. Further, the plaintiffs contend that the defendants breached the terms of the plaintiffs' employment contracts by reducing their salaries on September 1, 1982. Plaintiffs assert three federal law causes of action pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001–1381, and five pendent state law causes of action.

Presently pending in this matter are the parties' cross-motions for summary judgment. In its *Decision and Order* of May 16, 1984, 102 F.R.D. 147, the Court determined that it would resolve issues regarding certification of the plaintiff class after it first resolved the cross-motions for summary judgment. The Court proceeds to resolve these pending motions.

### Background

Various events occurring in 1982 inspired the present litigation. During 1982, faced with severe and continuing financial difficulties, defendant Allis-Chalmers Corporation ("Allis-Chalmers") undertook assorted actions seeking to contain, *inter alia*, labor costs. Specifically, on July 14, 1982, Allis-Chalmers announced in writing that sala-

ries of its salaried employees would be frozen for the remainder of 1982. On September 1, 1982, Allis-Chalmers "temporarily reduced" employee salaries by ten percent. While this temporary salary reduction was in effect, Allis-Chalmers terminated over 700 employees, including the plaintiffs.

In effect at the time of these employees' terminations was the Allis-Chalmers Salaried Employees' Termination Pay Plan ("The Plan"). The Plan constitutes an employee welfare benefit plan within the scope of ERISA 29 U.S.C. §§ 1002(1), 1003(a). Allis-Chalmers is the Plan's named fiduciary and through its Benefits Administration Committee serves as Administrator of this unfunded plan. Section 3 of the Plan provides termination pay to salaried employees who are involuntarily terminated (except those who are discharged for cause) in an amount equal to one week's pay for each year of service, up to a maximum of 30 weeks' pay.[1] Sections 1.06 and 1.07 of the Plan define a "week's pay" as the employee's "base monthly salary rate" in effect when the employee last worked for Allis-Chalmers multiplied by the fraction 40/173.33.[2] When the plaintiffs and the other Allis-Chalmers employees were terminated following the aforedescribed temporary salary reduction, Allis-Chalmers, as Administrator of the Plan, calculated the terminated employees' bene-

fits under the Plan based on their temporarily reduced salaries.

Although articulating several legal theories embodied in separate claims for relief, plaintiffs essentially seek recovery for two alleged wrongs performed by the defendants. First, plaintiffs claim that the defendants erroneously calculated their termination pay pursuant to the Plan based on their temporarily reduced salaries, rather than based on their salary levels existing just prior to the temporary reduction. Second, plaintiffs claim that by temporarily reducing plaintiffs' salaries on September 1, 1982, just one and one-half months after stating that their salaries would be frozen for the remainder of 1982, defendants breached their employment contracts with the plaintiffs.

Claims One through Five pertain to the plaintiffs' allegation that Allis-Chalmers erroneously calculated their termination pay based on their temporarily reduced salaries. Plaintiffs' first claim alleges that the defendants breached the terms of the Plan, in violation of ERISA 29 U.S.C. § 1132(a)(1), by calculating plaintiffs' severance pay in the aforementioned manner. Claim Two alleges that by calculating plaintiffs' severance pay in this manner, Allis-Chalmers, as Administrator of the Plan, breached its fiduciary duty to the plaintiffs in violation of ERISA 29 U.S.C.

---

**1.** Section 3 provides in full as follows:
SECTION 3. AMOUNT OF TERMINATION PAYMENT
The amount of termination payment shall be one Week's Pay for each full year of service with:
(a) A minimum of two Weeks' Pay and
(b) A maximum of:
(1) ten Weeks' Pay if the Eligible Employee's age is 61 on the date of his termination of service and he is then eligible to receive a normal or early retirement benefit under the Allis-Chalmers Salaried Employees' Retirement Plan,
(2) twenty Weeks' Pay if the Eligible Employee's age is 60 on the date of his termination of service and he is then eligible to receive a normal or early retirement benefit under the Allis-Chalmers Salaried Employees' Retirement Plan, or

(3) thirty Weeks' Pay if the Eligible Employee's age is 59 or less on the date of his termination of service without respect to the Eligible Employee's eligibility for a retirement benefit.

**2.** Sections 1.06 and 1.07 of the Plan provide in full as follows:
*1.06 Salary Rate*
The term "Salary Rate" upon which termination pay is computed is base monthly salary rate in effect for the month in which the employee last actively worked for the Company exclusive of any other form of additional compensation.
*1.07 Week's Pay*
The term "Week's Pay" is the product of Salary Rate multiplied by a fraction of which the numerator is 40 and the denominator is 173.33.

§ 1132(a)(3).[3] Plaintiffs' final ERISA claim, Claim Three, alleges that the defendants interfered with the plaintiffs' rights under the Plan in violation of 29 U.S.C. § 1140. Claims Four and Five seek recovery based on Wisconsin law theories, specifically Breach of Contract and Wrongful Deprivation of Severance Pay, respectively.

Claims Six through Eight in the plaintiffs' complaint pertain to the allegation that the defendants breached the plaintiffs' employment contracts by temporarily reducing their salaries on September 1, 1982, subsequent to stating on July 14, 1982, that the salaries would be frozen for the rest of 1982. Specifically, Claims Six through Eight seek recovery under Wisconsin law pursuant to the legal theories of Breach of Contract, Wrongful Reduction of Compensation and Promissory Estoppel, respectively.

The defendants move for summary judgment as to each of the plaintiffs' claims. Plaintiffs move for summary judgment only as to Claims Two and Six. In resolving these summary judgment motions the Court will apply the appropriate standards summarized by the Seventh Circuit Court of Appeals in *Moore v. Marketplace Restaurant, Inc.*, 754 F.2d 1336, 1339 (7th Cir.1985):

> It is well accepted that the purpose of summary judgment is to prevent an unnecessary trial where, on the basis of the pleadings and supporting documents, there remains no material issue of fact to be tried. *Kirk v. Home Indemnity Co.*, 431 F.2d 554, 559 (7th Cir.1970). Summary judgment is appropriate only if it appears that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Fitzsimmons v. Best*, 528 F.2d 692, 694 (7th Cir.1976); Fed.R.Civ.P. 56(c). The burden is upon the moving party to show that there is no issue of material fact in dispute, *Rose v. Bridgeport Brass Co.*, 487 F.2d 804, 808 (7th

Cir.1973), and all doubts as to the existence of an issue of material fact must be resolved against movant. *Moutoux v. Gulling Auto Electric, Inc.* 295 F.2d 573, 577 (7th Cir.1961).

The Court proceeds to resolve the merits of the parties' motions.

## Discussion

### ERISA Claims

### I. Claims One and Two

Claims One and Two of plaintiffs' complaint, although similar, seek recovery pursuant to distinct legal theories. Claim One alleges that the defendants breached the Plan terms in violation of 29 U.S.C. § 1132(a)(1). This is a non-fiduciary claim in the nature of a contract action. *Dameron v. Sinai Hosp. of Baltimore, Inc.*, 595 F.Supp. 1404, 1413 (D.Md.1984); *Kross v. Western Electric Co.*, 701 F.2d 1238, 1244 (7th Cir.1983). Claim Two alleges that Allis-Chalmers breached its fiduciary duties to the plaintiffs by paying severance benefits based on the plaintiffs' temporary reduced salaries. As such, plaintiffs claim that Allis-Chalmers violated ERISA itself, contrary to 29 U.S.C. §§ 1132(a)(3). *Kross, supra* at 1244.

Plaintiffs assert that the following factors and events support their Claim One allegations. The Plan, on its face, calls for the payment of severance benefits in accordance with the terminated employee's base monthly salary rate. Plaintiffs proffer evidence indicating that Allis-Chalmers viewed the September 1, 1982, salary reduction as a temporary measure having no effect on the employees' base monthly salary rate—their salaries existing just prior to the temporary salary reduction. Specifically, plaintiffs submit that subsequent to September 1, 1982, Allis-Chalmers hired new employees at pre-September 1 salary levels but informed these employees that their salaries had been temporarily reduced to the level outlined in the September 1

---

**3.** Plaintiffs bring Claim Two against Allis-Chalmers only; all other claims are brought against all defendants.

directive. Further, plaintiffs point out that following the September 1 salary reduction new rate cards were not prepared for the affected employees, contrary to company policy. Based on this evidence, plaintiffs contend that their base monthly salary rate that should have been used in calculating their severance benefits was their salary level existing just prior to the 10% temporarily reduction. Accordingly, plaintiffs conclude that Claim One states a valid cause of action against the defendants for breach of the Plan.

Regarding Claim Two, plaintiffs allege that Allis-Chalmers exploited its dual role as employer and Plan Administrator to improperly achieve substantial cash savings at the expense of the Plan's beneficiaries. Specifically, plaintiffs contend that in formulating and implementing the temporary salary reduction program, Allis-Chalmers knew that large scale terminations were imminent. Further, despite, or more appropriately, because of this knowledge, plaintiffs assert that Allis-Chalmers determined prior to implementing the salary reduction that it would interpret the Plan as authorizing the calculation of the terminated employees' severance benefits based on their salary levels in effect after the temporary reduction. In sum, plaintiffs attach conniving and self-serving motives to Allis-Chalmers' actions in 1982 as employer and Plan Administrator. Plaintiffs argue as to Claim Two, that based on the facts before it the Court should find as a matter of law that Allis-Chalmers as Administrator of the Plan breached its fiduciary duties to the plaintiffs. As to Claim One, plaintiffs contend that there exists issues of material fact regarding whether the defendants breached the terms of the Plan. Defendants argue that they are entitled to judgment as a matter of law as to both Claims One and Two.

Prior to addressing the merits of the parties' arguments, the Court must determine the appropriate standard applicable in reviewing Allis-Chalmers' interpretation of the Plan.[4] Plaintiffs argue, based primarily on *Struble v. N.J. Brewery Emp. Welfare Trust Fund*, 732 F.2d 325 (3d Cir. 1984), that this Court should determine whether Allis-Chalmers in interpreting the Plan acted in the "sole interest" of the Plan's beneficiaries. Defendants counter by arguing that the Court should apply the more deferential "arbitrary and capricious" standard of review.

It is clear that when reviewing a pension trustee's decision denying pension benefits to an individual claimant, a court applies the arbitrary and capricious standard of review. *Wardle v. Central States, Etc.*, 627 F.2d 820, 823–24 (7th Cir.1980); *Sly v. P.R. Mallory & Co., Inc.*, 712 F.2d 1209, 1211 (7th Cir.1983). This standard prevents excessive judicial intervention in pension plan operations and administration. *See Dennard v. Richards Group, Inc.*, 681 F.2d 306, 313 (5th Cir.1982).

█ However, this deferential review standard is not applicable in every case challenging a decision made by a pension plan fiduciary. In *Struble v. N.J. Brewery Emp. Welfare Trust Fund*, 732 F.2d 325 (3d Cir.1984), the Third Circuit Court of Appeals determined that the arbitrary and capricious standard was applicable only where the issue concerned the legality of the trustee's decision to deny pension plan benefits to particular claimants. *Id.* at 333. In such a situation, the trustee balances the interests of present claimants against the interests of future claimants, thereby justifying use of the more deferential arbitrary and capricious standard. *Id.* But where the issue is whether the trustee has

---

**4.** Since Claims One and Two allege that the Plan was erroneously interpreted—Claim One alleging that the defendants' interpretation of the Plan breached the Plan terms and Claim Two alleging that Allis-Chalmers violated ERISA by breaching its fiduciary duty in interpreting the Plan—the Court determines the appropriate review standard applicable in resolving the summary judgment motions as to both claims. *See Struble v. N.J. Brewery Emp. Welfare Trust Fund*, 732 F.2d 325, 338 (3d Cir.1984) (trust fund beneficiaries may not maintain a derivative action against trustees, pursuant to 29 U.S.C. § 1132(a)(1), unless they first establish a fiduciary breach).

sacrificed the interests of the pension plan beneficiaries as a class in favor of some third party's interests, a court should apply the "sole benefit" test—that is, whether the trustee acted in the sole benefit of the pension plan beneficiaries. *Id.*

*Struble* involved an employer's decision, as trustee of a trust fund subject to ERISA, to offset the trust fund's surplus against its obligation as employer to contribute a set amount to the fund pursuant to the terms of a collective bargaining agreement. The Third Circuit held that such a decision benefited a third party, namely the employer, to the detriment of the trust fund's beneficiaries. Thus, the "sole benefit" standard, rather than the "arbitrary and capricious" standard, was appropriate.

In *Jung v. FMC Corp.*, 755 F.2d 708 (9th Cir.1985), the Ninth Circuit Court of Appeals[5] distinguished *Struble*. *Jung* involved a decision by an employer/plan administrator to deny severance benefits to employee beneficiaries of an unfunded welfare benefit plan. As such, this decision directly benefited the employer since it thereby avoided a substantial financial outlay. Nevertheless, the court declined to follow *Struble:*

> *Struble* involved an existing trust fund, and a rejection by employer-selected trustees of a proposed increase in benefits in favor of reducing the contributions the employers had agreed to dedicate. Plans like the one before us have no arrangement for funding, the employer has formulated the terms under which benefits will be paid, benefits are paid directly by the employer, and the employer makes all decisions on claims. Whatever may be the appropriate standard of review in cases like *Struble*, the arbitrary and capricious standard seems adequate for the purposes of ERISA in the situation before us. Where, as here, the employer's denial of benefits to a class avoids a very substantial outlay, the reviewing court should consider that fact in

applying the arbitrary and capricious standard of review. Less deference should be given to the trustee's decision. *Jung*, 755 F.2d at 711–12.

In the present case, the Court finds the arbitrary and capricious standard appropriate. Allis-Chalmers' interpretation of the Plan to require calculation of severance benefits based on the employees' salary levels in effect upon their termination—the temporary reduced salaries—affected only those employees. In other words, only those employees terminated while the temporary salary reduction was in effect were affected by this interpretation of the Plan. Under such circumstances where the fiduciary's action affects only one group among the potential beneficiaries, use of the arbitrary and capricious standard is favored. *See Holland v. Burlington Industries, Inc.*, 772 F.2d 1140, 1148–49 (4th Cir.1985). Further, in the present case the employer has formulated the terms of the unfunded termination pay plan, pays the benefits directly and decides when it will pay out on claims. The *Jung* court found these factors decisive in distinguishing *Struble* to apply the arbitrary and capricious standard. 755 F.2d at 711. The Court proceeds to review Allis-Chalmers' interpretation of the Plan using the arbitrary and capricious standard.

In determining whether Allis-Chalmers breached its fiduciary duty to the plaintiffs, the Court reviews only Allis-Chalmers' actions performed in its role as Administrator of the Plan. *Sutton v. Weirton Steel Div. of Nat. Steel Corp.*, 724 F.2d 406, 410–11 (4th Cir.1983). Fidicuary obligations do not attach to actions taken by Allis-Chalmers as employer. *Id.* Instead, the Court will give less deference to an employer's decision made in its fiduciary capacity that benefits itself to the detriment of the beneficiaries of an ERISA plan. *Jung*, 755 F.2d 712. In sum, the Court will review Allis-Chalmers' interpretation of the Plan at issue in this case under the aforementioned fiduciary standard and in light of the fact

---

5. The Hon. Thomas E. Fairchild, Senior Circuit Judge for the Seventh Circuit Court of Appeals, sitting by designation, authored the panel's opinion.

that this interpretation pecuniarily benefited Allis-Chalmers as employer.

■ The Court finds that Allis-Chalmers' fiduciary actions at issue were not arbitrary and capricious. Section 1.06 of the Plan, quoted *supra* at n. 2, states that the salary component of the termination pay is the "base monthly salary rate in effect for the month in which the employee last actively worked for" Allis-Chalmers. The Plan does not define "base monthly salary rate." The Plan makes no distinction between an employee's "base monthly salary rate" and an employee's "temporarily reduced salary rate"; nor does the Plan discuss whether the former is pertinent for termination pay purposes when the latter existed throughout the month of the employee's termination.

Upon examining the Plan terms, the Court feels that Allis-Chalmers properly interpreted the Plan to require termination benefits based on the terminated employee's actual salary level during the employee's last working month. Such an interpretation was not arbitrary and capricious. *See* Comment, *The Arbitrary and Capricious Standard Under ERISA: Its Origins and Application*, 23 Duq.L.Rev. 1033, 1051 (1985). Allis-Chalmers, as Administrator of the Plan, interpreted the Plan consistent with the meaning of the Plan terms. Plaintiffs' allegations that Allis-Chalmers as employer reduced their salaries knowing that they would soon be terminated so as to deprive them of termination pay benefits are appropriately considered pursuant to their claim under 29 U.S.C. § 1140, discussed *infra*. Accordingly, the Court finds as a matter of law that Allis-Chalmers' interpretation of the Plan was not arbitrary and capricious. Defendants are GRANTED summary judgment in their favor as to Claims One and Two.

## II. Claim Three

■ Claim Three of plaintiffs' complaint seeks recovery pursuant to ERISA 29 U.S.C. § 1140. This section renders it unlawful for an employer to discriminate against any employee "for the purpose of interfering with the attainment of any right to which such [employee] may become entitled under [an employee benefit plan subject to ERISA]." This section was designed primarily to protect employment relationships that give rise to an individual's rights under an employment benefit plan. *West v. Butler*, 621 F.2d 240, 245 (6th Cir.1980). To violate 29 U.S.C. § 1140, the employer's actions "must affect the individual's employment relationship in some substantial way." *Id.* at 245–46. This section is aimed solely at protecting individual rights. *Id.*

Plaintiffs describe the basis for their § 510 claim by chronologizing the events of 1982. In July of 1982, Allis-Chalmers informed its salaried employees that their salaries would be frozen for the remainder of 1982. Nevertheless, in August of 1982, Allis-Chalmers announced that effective September 1, 1982, salaries would be temporarily reduced by ten percent. Plaintiffs contend that at the time of this announcement, plans were under way to make massive reductions in the salaried workforce. In support of this contention, plaintiffs identify portions of two particular plaintiff's depositions stating that prior to announcing the temporary salary reduction, Allis-Chalmers informed them that they would be terminated in the near future. (Pokel Dep. at 312; Teller Dep. at 365–66). Allis-Chalmers did indeed engage in large-scale terminations subsequent to implementing the temporary salary reduction.

Based on these events, and the inferences that can be drawn therefrom, plaintiffs argue that Allis-Chalmers violated 29 U.S.C. § 1140. That is, prior to terminating the plaintiffs, Allis-Chalmers knew that it would garner substantial savings by calculating termination benefits based on the plaintiffs' temporarily reduced salaries and subsequently acted to achieve these savings. Plaintiffs contend that this scenario depicts Allis-Chalmers' interference with employee rights under ERISA in violation of 29 U.S.C. § 1140.

Defendants move for summary judgment as to Claim Three arguing that plaintiffs' scheme theory lacks any support. Further,

**920**

defendants assert that there was no discrimination since Allis-Chalmers' actions affected all Plan beneficiaries.

■ The Court finds that plaintiffs' Claim Three states a valid cause of action pursuant to ERISA 29 U.S.C. § 1140. Firstly, plaintiffs validly assert that an employer who acts to diminish an employee's participation in an ERISA benefit plan violates 29 U.S.C. § 1140. *See Kross v. Western Elec. Co., Inc.*, 701 F.2d 1238 (7th Cir.1983). That is, diminishing plaintiffs' participation in the Plan constitutes discrimination against plaintiffs for the purpose of interfering with the attainment of rights as Plan participants. *See Aronson v. Servus Rubber Div. of Chromalloy*, 566 F.Supp. 1545, 1555 (D.Mass.1983). Secondly, defendants' contention that there could be no discrimination because the salaries of *all* salaried personnel were reduced lacks merit. The temporary salary reduction adversely affected participation in the Plan's severance pay benefits only for those employees terminated while the salary reduction was in effect. That group of affected employees can claim unlawful discrimination for the purposes of interfering with Plan participation in violation of 29 U.S.C. § 1140.

Based on the plaintiffs' arguments and proffered evidence, the Court finds that Claim Three states a valid cause of action pursuant to ERISA 29 U.S.C. § 1140. Accordingly, defendants' motion for summary judgment as to Claim Three is DENIED.

### State Law Claims Alleging Unlawful Denial of Severance Pay

Claims Four and Five of plaintiffs' complaint allege Breach of Contract and Wrongful Deprivation of Severance Pay, respectively. These claims stem from the aforedescribed circumstances concerning Allis-Chalmers' calculating plaintiffs' severance benefits based on their temporarily reduced salaries.

Defendants move for summary judgment as to both Claims Four and Five arguing that ERISA preempts these claims. 29 U.S.C. § 1144. Plaintiffs respond by stating that "[a]lthough plaintiffs' Count Four may fall in the scope of the preemption, plaintiffs' claim for wrongful deprivation of severance pay, set forth in Count Five, turns on issues too remote and peripheral to the Plan per se to be preempted." *Plaintiffs' Brief In Opposition To Defendants' Motion For Summary Judgment* at 28.

■ The provisions of ERISA superceded all statutory and judicially created state laws insofar as they relate to any employment benefit plan subject to ERISA. 29 U.S.C. § 1144. In *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983), the Supreme Court held that the ERISA preemption provision stated in 29 U.S.C. § 1144 must be given broad effect: "A law 'relates to' an employee benefit plan, in the normal sense of the phrase, if it has a connection with or reference to such a plan." *Id.* at 96–97, 103 S.Ct. at 2900. This preemption provision displaces all state laws falling within its sphere, even those laws consistent with ERISA's substantive requirements. *Metropolitan Life Insurance Co. v. Massachusetts*, — U.S. —, 105 S.Ct. 2380, 2389, 85 L.Ed.2d 728 (1985). This broad reading of the ERISA preemption provision furthers ERISA's policy objective of ensuring uniformity in employee benefit laws. *Holland v. Burlington Industries, Inc.*, 772 F.2d 1140, 1147 (4th Cir.1985).

■ The Court finds that ERISA preempts Claims Four and Five. Claim Four states that the Plan is a contract between plaintiffs and defendants which required that the plaintiffs be paid termination pay based on their unreduced, pre-September 1, 1982 salary rather than on their temporarily reduced, post-August 31, 1982 salary. Defendants' failure to pay plaintiffs' termination pay according to these asserted dictates of the Plan constituted a breach of contract under Wisconsin law, Claim Four concludes. As such, Claim Four restates the Claim One allegations that the defendants breached the terms of the Plan in violation of 29 U.S.C. § 1132(a). Accordingly, the Court finds that ERISA

preempts Claim Four and hereby GRANTS defendants' motion for summary judgment as to Claim Four.

Claim Five alleges that defendants wrongfully deprived plaintiffs of severance pay by performing the aforedescribed "scheme." This cause of action sounds in tort. *Lueck v. Aetna Life and Insurance Co.*, 116 Wis.2d 559, 565, 342 N.W.2d 699, 702 (1984). This claim relates to the manner in which the defendants acted, as employers, to allegedly deprive the plaintiffs of severance benefits. The substance of Claim Five pertains to the defendants' alleged scheme to deprive plaintiffs of benefits and their actions taken as employers to formulate and implement this scheme. Such allegations are quite similar, if not identical, to the allegations voiced in Claim Three asserting that defendants unlawfully interfered with the plaintiffs' participation in the Plan in violation of 29 U.S.C. § 1140. The Court finds that ERISA preempts Claim Five and hereby GRANTS defendants' motion for summary judgment as to Claim Five.

**Wisconsin Law Claims Concerning The September 1 Temporary Salary Reduction**

**I. Claims Six and Seven**

Plaintiffs contend that the defendant employers' action in temporarily reducing their salaries on September 1, 1982, constituted a breach of their employment contracts (Claim Six) and a tort of wrongful reduction in compensation (Claim Seven). Both parties move for summary judgment as to Claim Six and defendants also move for summary judgment as to Claim Seven.

Plaintiffs were "at will" employees of Allis-Chalmers, subject to termination at any time and for any reason. In 1982, Allis-Chalmers was experiencing financial difficulties and sought to take ameliorative action. Plaintiffs concede that they were aware of Allis-Chalmers' severe financial plight. In this context, the events giving rise to Claims Six and Seven should be viewed.

On July 14, 1982, the president of Allis-Chalmers issued a letter to Allis-Chalmers' employees stating in pertinent part as follows:

Dear Employee:

Earlier this year, I asked for your support to help keep the Company moving forward in these difficult economic times. Certain cost-savings actions were effected to meet the situation at that time. Further deterioration of the economy recently has made it necessary to take additional steps to maintain the Company's financial position.

As the majority of you have already been advised in meetings with your management, the following actions affecting salaried employees have been taken.

\* \* \* \* \* \*

—The pay of all other salaried employees has been frozen through December of 1982.

\* \* \* \* \* \*

Just over one month later, on August 23, 1982, Allis-Chalmers issued a statement to its employees entitled "Guidelines For Salaried Reduction Program." This directive stated, *inter alia*, that "[e]ffective September 1, 1982 the base salary of all salaried personnel will be reduced 10 percent and frozen at that level."

Plaintiffs argue that the July 14, 1982 salary freeze constituted a binding contract and the September 1, 1982 temporary salary reduction breached this contract. Further, plaintiffs contend that Allis-Chalmers' conduct in reducing plaintiffs' salaries after freezing these salaries demonstrates that the freeze itself was a subterfuge and supports their claim that defendants wrongfully reduced plaintiffs' compensation.

All parties agree that a necessary prerequisite to plaintiffs maintaining Claims Six and Seven is establishing that the July 14, 1982 Salary Freeze constituted a binding contract. Under Wisconsin law, the burden of establishing the existence of a contract is on the party attempting to recover for its breach. *Household Utili-*

*ties, Inc. v. Andrews Co., Inc.,* 71 Wis.2d 17, 28, 236 N.W.2d 663, 669 (1976). An employer's personnel policies offering stated benefits in exchange for the employee's service, are binding contracts upon the substantial performance of the requested services. *Demerath v. Nestle Co., Inc.,* 121 Wis.2d. 194, 197, 358 N.W.2d 541, 543 (App. 1984); *Compton v. Shopko Stores, Inc.,* 93 Wis.2d 613, 625, 287 N.W.2d 720, 725 (1980).

█ The Court finds strained and unreasonable plaintiffs' theory that the salary freeze constituted a binding contract. Read in the context of Allis-Chalmers' financial difficulties and its measures taken to alleviate these difficulties, a context perceived by plaintiffs, the July 14, 1982 letter announcing the salary freeze merely informed the Allis-Chalmers employees of a cost-saving measure to be employed in response to Allis-Chalmers' financial difficulties. Plaintiffs offer no evidence that prior to the freeze they possessed expectations, whether legally enforceable or not, of receiving a salary increase. Nor had they received assurances that their pay would not be reduced. Put simply, the July 14, 1982 freeze and the September 1, 1982 salary reduction were cost containment measures taken by Allis-Chalmers in response to financial difficulties. By continuing to work for Allis-Chalmers following the freeze and salary reduction, plaintiffs accepted these measures as terms of their employment. The September 1, 1982 salary freeze cannot be reasonably interpreted as a contractual commitment by Allis-Chalmers to maintain salary levels for the remainder of 1982 at their pre-September 1 levels. Accordingly, the Court finds that the September 1, 1982 salary freeze did not constitute a binding contract and hereby GRANTS defendants' motion for summary judgment as to Claims Six and Seven.

## II.  Claim Eight

█ Plaintiffs' Claim Eight alleges a promissory estoppel cause of action under Wisconsin law. This claim asserts that plaintiffs detrimentally relied on Allis-Chal-

mers' July 14, 1982 statement that all salaries would be frozen for the remainder of 1982. To recover under a promissory estoppel theory, plaintiffs must establish that all of the following questions are answered affirmatively:

1.  Was the promise one which the promisor should reasonably expect to induce action or forbearance of a definite and substantial character on the part of the promisee?

2.  Did the promise induce such action or forbearance?

3.  Can injustice be avoided only by enforcement of the promise?

*Hoffman v. Red Owl Stores, Inc.,* 26 Wis.2d 683, 698, 133 N.W.2d 267, 275 (1965).

█ There exists no material factual issue as to any of these three factors. First, the July 14, 1982 letter stating that salaries would be frozen for the remainder of 1982 was not such that Allis-Chalmers should have reasonably expected that it would induce plaintiffs to refrain from seeking other employment. Second, plaintiffs uniformly testified that they did not forego other employment opportunities as a result of the salary freeze. (Plaintiffs' Dep. at 30, 106, 166, 213, 267–69, 273, 324–25, 377, 412). Finally, since there was no detrimental reliance, no injustice flowed from the temporary salary reduction implemented subsequent to the salary freeze. Accordingly, the Court hereby GRANTS defendants' motion for summary judgment as to Claim Eight.

### Summary

The Court herein DENIES defendants' motion for summary judgment as to Claim Three of plaintiffs' complaint and GRANTS defendants' motions for summary judgment as to all other claims in plaintiffs' complaint. Finally, to acquaint the Court with the present posture of this case and to schedule further proceedings as appropriate, the Court will hold a status conference on *Wednesday, August 6, 1986 at 9:45 a.m.*