Steven R. Passehl, Plaintiff-Respondent,
v.
Jay Zeinert, Defendant-Appellant,
Cherie Zeinert, Defendant.
No. 04-1960-FT.
Court of Appeals of Wisconsin.
Opinion Filed: March 8, 2005.
Before Cane, C.J., Hoover, P.J., and Peterson, J.
¶1 PER CURIAM.
Jay Zeinert appeals a judgment awarding Steven Passehl $5,895.53 in contract damages.[1] Zeinert argues that the trial court erroneously (1) determined that a contract existed, (2) failed to apply WIS. STAT. §§ 402.201 and 241.02, requiring certain contracts to be in writing, and (3) found that Passehl had not been fully paid. Because the evidence supports the trial court's rulings, we affirm the judgment.
¶2 Passehl is a certified forester. Zeinert testified that following employment with logging companies, he worked on his own as a logger for seven or eight years. Passehl and Zeinert agreed to purchase timber from landowners, harvest it and sell it to local mills.
¶3 Passehl testified that "I would find [Zeinert] timber sales that were to be cut, and he would go ahead and cut them, and I was paid accordingly." Passehl's duties included contacting the landowners, marking and measuring the timber and ascertaining property boundaries. Passehl described Zeinert's duties as "overseeing the cutting ... wood removal, getting it shipped to the mills, keeping the records." Profit was determined by the "difference of what the landowner was paid and what the profit was from the sale of the logs." Passehl stated that he was to receive one-half of the net proceeds. The parties never reduced their agreement to writing.
¶4 The trial court found that Passehl "was going to find some jobs, and round up the buyers, and ... do some figuring and do some negotiating; but actually, Mr. Zeinert was going to do the work." The court determined that each timber harvest contract entered into with various landowners was a separate contract to be performed within one year.
¶5 In 2003, the parties harvested timber from the "Pella/Lacy" property. As the court stated, the parties "made a deal with the landowners to log the property." The court further found:
Mr. Passehl says he was supposed to be paid one half of the net. And he said that that was understood between the parties because over the years they have had a long relationship. They had done, he thought, 20 jobs or so. Mr. Zeinert says maybe a dozen or so.
¶6 Zeinert never denied that Passehl was instrumental in getting the contract with the Lacy/Pella property, but claimed that Passehl had been fully paid. Passehl testified that he was not fully paid for the Pella/Lacy job and payments he had received we re from other jobs.
¶7 The court found that Zeinert breached his duties under the parties' oral agreement and owed Passehl $5,895.53. The court found that the parties' agreement need not have been in writing under WIS. STAT. § 402.201(1) because their contract with one another was for services, not goods. In addition, the court determined that no written agreement was needed under WIS. STAT . § 241.02 because the contract was to be performed within one year. Zeinert appeals.
¶8 Zeinart argues that the trial court erroneously concluded that a contract existed with Passehl. We disagree. Whether the parties entered into a contract depends on findings of fact. See Gerner v. Vasby, 75 Wis. 2d 660, 661, 250 N.W.2d 319 (1977); Household Utils. v. Andrews Co., 71 Wis. 2d 17, 29, 236 N.W.2d 663 (1976).[2] We uphold the trial court's fact findings unless they are clearly erroneous. WIS. STAT. § 805.17(2). The trial court, not this court, is the arbiter of conflicting testimony. As this court has frequently stated, it is not our function to review questions as to weight of testimony and credibility of witnesses. These are matters to be determined by the trier of fact and their determination will not be distrubed where more than one reasonable inference can be drawn from credible evidence. Valiga v. National Food Co., 58 Wis. 2d 232, 244, 206 N.W.2d 377 (1973).
¶9 The requisites of a contract are an offer, acceptance, and consideration, all resulting from a meeting of the minds. See Goosen v. Estate of Standaert, 189 Wis. 2d 237, 246-47, 525 N.W.2d 314 (Ct. App. 1994).
[A] contract is implied in fact where the intention as to it is not manifested by direct or explicit words between the parties, but is to be gathered by implication or proper deduction from the conduct of the parties, language used or things done by them, or other pertinent circumstances attending the transaction.
Theuerkauf v. Sutton, 102 Wis. 2d 176, 185, 306 N.W.2d 651 (1981) (citations omitted).
¶10 It is undisputed that the parties had a contractual relationship for the purpose of harvesting timber for profit.[3] It is also undisputed that they entered into between twelve and twenty separate logging jobs.[4] Passehl described in detail the parties' agreements, the circumstances of the Pella/Lacy job, how they divided responsibilities, and the terms for payment.[5] Zeinert did not dispute Passehl was instrumental in obtaining the Pella/Lacy job or that Passehl was to be paid one half of the net from the sale of the timber. The dispute at trial centered on whether Passehl had been paid in full.
¶11 The trial court did not err in finding that a contract existed between Passehl and Zienert. Zeinert relies on inconsistencies in the parties' testimony to argue that there was no agreement as to the terms of the contract. Our role on appeal, however, is to review the record for evidence to support the findings that the court reached, not for evidence to support findings the court did not make. In re Estate of Dejmal, 95 Wis. 2d 141, 154, 289 N.W.2d 813 (1980). The trial court was entitled to resolve the inconsistencies and conclude that the parties reached a valid contract concerning the Pella/Lacy timber harvest.
¶12 Zeinert argues, nonetheless, that Passehl refused to sign the contract with the landowners and that he declined to answer interrogatories regarding compensation expected and received. This argument fails to command reversal. There is no indication that it was necessary for Passehl to sign the agreement with the landowners to be entitled to payment for his services in locating and arranging the job. Zeinert's argument with respect to Passehl's failure to answer interrogatories is unaccompanied by legal citation and therefore will not be considered. See State v. Gulrud, 140 Wis. 2d 721, 730, 412 N.W.2d 139 (Ct. App. 1987) (This court declines to abandon its neutrality in an attempt to develop appellant's argument.).
¶13 Next, Zeinert argues that the trial court erroneously failed to apply WIS. STAT. §§ 402.201 and 241.02(1)(a), that require the parties' contract to be in writing. We disagree.
¶14 WISCONSIN STAT. § 402.201(2) requires that contracts for the sales of goods of $500 or more be in writing.[6] Here, the trial court found that Passehl's duties under the contract did not involve the sale of goods but rather the performance of services. Passehl testified that his duties were to locate timber, ascertain boundaries, and negotiate with landowners. His testimony supports the trial court's finding, and therefore, this finding is not clearly erroneous. Because the parties' contract with one another concerned services, the trial court correctly held that WIS. STAT. § 402.201 did not apply.
¶15 We further conclude that the court correctly held that WIS. STAT. § 241.02 did not apply.[7] The record fails to indicate that the Pella/Lacy job was to take more than one year. The exhibits indicate that the job lasted for approximately four months. Also, there is no suggestion that Passehl was under any continuing obligation to Zeinert. Rather, when Passehl would locate stands of timber, he made arrangements with Zeinert for the harvest. Therefore, the trial court properly found that the parties' business relationship consisted of a series of individual contracts rather than a contract for an indefinite term.
¶16 Finally, the trial court's finding that Passehl was not paid in full for the Pella/Lacy job is not clearly erroneous. Zeinert testified that in 2002, he paid Passehl with two checks, one in May and one in June, and gave him cash, as compensation for the Pella/Lacy job. Passehl disputed this testimony, pointing out the Pella/Lacy job did not start until June and lasted until September of 2002. He claimed the payments were for other jobs and that the checks dated May 9, 2002 for $3,000, stated "Amherst job" on the memo line. Later, on Zeinert's copy of the exhibit, t he word "Amherst" was crossed out.
¶17 It is the trial court's function to resolve contradictory testimony. WIS. STAT. § 805.17(2). Here, the trial court gave greater weight to Passehl's testimony. Its decision to resolve the conflicting accounts of payment in favor of Passehl's credibility is not grounds for reversal.
By the Court.  Judgment affirmed.
NOTES
[1] This is an expedited appeal under WIS. STAT. RULE 809.17. All references to the Wisconsin Statutes are to the 2003-04 version unless otherwise noted.
[2] Zeinert contends that this issue is a question of law that we review de novo, citing Jones v. Jenkins, 88 Wis. 2d 712, 722, 277 N.W.2d 815 (1979), holding "the construction of a written contract is a question of law for the court which may be reviewed independently on appeal." Because Zeinart characterizes his issue whether the contract existed, not whether the court correctly construed the contract, the cited standard of review does not apply.
[3] Zeinert was asked: "You agree with the plaintiff's assertion that this is an ongoing contractual agreement that started sometime in 1999 and continued through the end of 2002?" to which Zeinert replied, "Yes."
[4] Zeinert testified, "At best it would be 20. I'm guessing more around 12 or 13."
[5] Passehl testified, "My understanding of that agreement was I was to make half of the net profit to include the money paid on the bolts and pulp."
[6] WISCONSIN STAT. § 402.201, entitled "Formal requirements; statute of frauds" provides in part:

(1) Except as otherwise provided in this section a contract for the sale of goods for the price of $500 or more is not enforceable by way of action or defense unless there is some writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought or by the party's authorized agent or broker. A writing is not insufficient because it omits or incorrectly states a term agreed upon but the contract is not enforceable under this subsection beyond the quantity of goods shown in such writing.
(2) Between merchants if within a reasonable time a writing in confirmation of the contract and sufficient against the sender is received and the party receiving it has reason to know its contents, it satisfies the requirements of sub. (1) against such party unless written notice of objection to its contents is given within 10 days after it is received.
[7] WISCONSIN STAT. § 241.02, entitled: "Agreements, what must be written" reads in part:

(1) In the following case every agreement shall be void unless such agreement or some note or memorandum thereof, expressing the consideration, be in writing and subscribed by the party charged therewith:
(a) Every agreement that by its terms is not to be performed within one year from the making thereof.